IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| JOHN MATTHEW COOK, ELLYSMAR GÓMEZ LUZARDO,<br><br>Plaintiffs,<br><br>v.<br><br>F. GERARDO LARREA OLOZAGA, JUAN A. LARREA FRENCH, CARIBBEAN GLAZE CORPORATION, GLAZE ON INVESTMENT, INC., LUIS ARENAS, ALEJANDRO D. CERDA, IVELISSE BORRERO DE CORDOVÉS, ARTURO FERNÁNDEZ, FELIPE FLORES ROLÓN, FRANCISCO GERARDO LARREA FRENCH, MARÍA LARREA FRENCH, GILBERTO MARXUACH, JACOBO ORTIZ MURIAS, ANICETO SOLARES RIVERO Y FERNANDO L. TORO,<br><br>Defendants. | Civil No.:  2014-01544 (CCC)<br><br>RE: SECURITIES FRAUD; SHAREHOLDERS DIRECT and DERIVATIVE ACTION FOR BREACH OF FIDUCIARY DUTIES, CONFLICT OF INTEREST and ULTRA VIRES ACTS; DECLARATORY JUDGMENT; DAMAGES |

**AMENDED VERIFIED COMPLAINT**

**TO THE HONORABLE COURT:**

**COME NOW PLAINTIFFS,** John Matthew Cook and Ellysmar Gómez Luzardo, by and through the undersigned attorneys, and most respectfully state and pray as follows:

**I.**
**JURISDICTION AND VENUE**

1.     This Honorable Court has original federal jurisdiction over this action pursuant to 28 U.S.C. §1331 inasmuch as it alleges one or more violations of Section 10(b) of the

1934 Securities Exchange Act, 15 U.S.C.A. §78j (b), and/or SEC Rule 10b-5, 17 C.F.R. § 240, promulgated thereunder.

2.      This Honorable Court has supplemental jurisdiction over the State law causes of action pursuant to 28 U.S.C. §1367(a) inasmuch as they are so related to the claims in this action over which the Court has original jurisdiction.

3.      The State law causes of action form part of the same case or controversy under Article III of the U.S. Constitution and they do not raise novel or complex questions of State law and they do not predominate over the claims over which the Court has original jurisdiction.

4.       Venue is proper in this district pursuant to 28 U.S.C. §1391(b) (2) and (c), inasmuch as this action is brought i the judicial district in which all of the events or omissions giving rise to the claims occurred.

## II
## THE PARTIES

5.      Plaintiff John Matthew Cook ("Cook") is an individual residing in Puerto Rico with postal address at P.O. Box 366939, San Juan, Puerto Rico, 00936; tel.: (787) 936-7102. Cook is one of the four co-founders of Caribbean Glaze Corporation, exclusive franchisee of Krispy Kreme in Puerto Rico, and has served as its Managing Director, President and Chief Executive Officer since its inception. Cook is a member of Caribbean Glaze Corporation's and Glaze On Investment, Inc.'s, Board of Directors. Mr. Cook owns 25% of the shares of Glaze On Investment, Inc., Caribbean Glaze Corporation's holding company since its inception, throughout all the time in which the

fraudulent misrepresentation and actions alleged in this Complaint occurred until the present.

6.      Plaintiff Ellysmar Gómez Luzardo ("Gómez") is an individual residing in Puerto Rico with postal address at P.O. Box 10252, San Juan, Puerto Rico, 00908; tel.: (787) 936-7103. Ms. Gómez is one of the four co-founding partners of Caribbean Glaze Corporation, the exclusive franchisee of Krispy Kreme in Puerto Rico. Gómez owns 25% of the shares of Glaze On Investment, Inc., Caribbean Glaze Corporations' holding company since its inception, throughout all the time in which the fraudulent misrepresentation and actions alleged in this Complaint occurred until the present. Plaintiff Gómez sits on the Board of Directors of the Companies and serves as Executive Vice President & Treasurer of Caribbean Glaze Corporation.

7.      Defendant Caribbean Glaze Corporation (hereinafter "CGC") is a for profit, domestic corporation organized under the laws of the Commonwealth of Puerto Rico, duly authorized to do business in Puerto Rico, Registry Number 136658. CGC's principal place of business is located in Royal Industrial Park, Building J2, Road 869, Km 1.5, Barrio Palmas, Cataño, Puerto Rico, 00962, and postal address P.O. Box 366939, San Juan, Puerto Rico, 00936; tel.: (787) 936-7101.  CGC is the exclusive franchisee of Krispy Kreme for Puerto Rico.

8.      Defendant Glaze On Investment, Inc.  (hereinafter "GOI")   is a corporation organized under the laws of the Commonwealth of Puerto Rico, duly authorized to do business in Puerto Rico, Registry Number 143848, with principal place of business located in Royal Industrial Park, Building J2, Road 869, Km 1.5, Barrio Palmas, Cataño,

Puerto Rico, 00962 and postal address P.O. Box 366939, San Juan, Puerto Rico, 00936; tel.: (787) 936-7101. GOI is the holding company of 100% of CGC's shares.

9.      Defendant Juan Antonio Larrea French ("Larrea French"), is an individual residing in Puerto Rico with address at Edificio K, Carretera 869, Km 1.5 Barrio Palmas, Cataño, Puerto Rico.    Defendant Larrea French is one of the four co-founders of CGC. Larrea French sits on the Board of Directors of CGC as Chairman. Larrea French owns 25% of the shares of GOI, CGC's holding company.

10.      Defendant Gerardo Larrea Olozaga ("Larrea Olozaga"), is an individual residing in Puerto Rico with postal address at Calle Tabonuco B5, Galería San Patricio, Office 213, Caparra Hills, Guaynabo, PR 00968.  Defendant Larrea Olozaga is one of the four co-founders of CGC and owns 25% of the shares of GOI, CGC's holding company. Larrea Olozaga is Larrea French's father.  As of April 2010, Larrea Olozaga sits on the Board of Directors of CGC and GOI.

11.      Defendant María Larrea French is an individual residing in 4711 University Drive, Coral Gables, Florida, 33146. Defendant Maria Larrea French is Defendant Larrea French's sister and Defendant Larrea Olozaga's daughter.

12.      Defendant Francisco Gerardo Larrea French is an individual residing in 5272 N.W. 112 St, Miami, Florida. Defendant Francisco Gerardo Larrea French is Defendant Larrea French's brother and Defendant Larrea Olozaga's son and works as Director of Marketing at South American Restaurants Corp. ("SARCO") in Miami, Florida.

13.      Defendant Aniceto Solares is an individual residing in Puerto Rico with postal address at PO Box 366999, San Juan, P.R. 00936-6999. Defendant Solares is a

partner of Larrea French and Larrea Olozaga in PT, Inc. ("PT"), the Pollo Tropical franchisee.

14.    Defendant Luis Arenas is an individual residing in Puerto Rico with postal address at 425 Road 693, UPS #317, Dorado, Puerto Rico, 00646. Defendant Arenas is a partner of Larrea French and Larrea Olozaga in SARCO, South American Capital Corp. ("SARCAP"), International Restaurant Services, Inc. ("IRSI") the Chili's and Romano's Macaroni Franchise and PT, Inc.

15.    Defendant Jacobo Ortiz Murias is an individual residing in Puerto Rico with postal address at Colgate Palmolive Bldg., Suite 308, Metro Office Park, Street Num. 1, Guaynabo, Puerto Rico, 00968-1705.    Ortiz is a partner of Larrea French and Larrea Olozaga in IRSI and PT and serves as Secretary to CGC's Board of Directors since January 2008.  Ortíz has provided legal services to CGC and GOI.

16.    Defendant Gilberto Marxuach Torros, is an individual residing in Puerto Rico with postal address at V4 Corta Street, Guaynabo, Puerto Rico, 00966. Defendant Marxuach Torros has provided CGC and GOI legal services while an attorney at McConnell Valdés and has been an attorney for several of the Larreas' businesses. Defendant Marxuach served as Secretary of the Boards of Directors of GOI and CGC since their inception until December 2008.

17.    Defendant Fernando Toro is an individual residing in Puerto Rico with postal address at PO Box 360831, San Juan Puerto Rico, 00936.  Defendant Toro is a realtor and President of Property Concepts, a commercial real estate company affiliated with Cushman Wakefield and is the local real estate representative for Kimco Realty. Defendant Toro has brokered sites for CGC, SARCO and other Larrea Companies.

18.    Defendant Alejandro (Alex) D. Cerda is an individual residing in Puerto Rico with postal address at 1158 Magdalena Avenue, #6, San Juan, Puerto Rico, 00907. Cerda is Vice-President of Operations for PT and previously worked for IRSI as a general manager of Romano's Macaroni Grill.

19.    Defendant Ivelisse Borrero de Cordovés is an individual residing in Puerto Rico with postal address at Bosque Dorado, Urbanization, 60027 Tulipan Street, Dorado, Puerto Rico,00646 . Defendant Borrero has been Vice President of Human Resources, at SARCO for the past twelve (12) years.

20.    Defendant Arturo Fernández is an individual residing in Puerto Rico with postal address at Hacienda San José, Cautiva # 972, Caguas, Puerto Rico, 00727. Defendant Arturo Fernández is Senior Vice President of Operations, at SARCO where he has worked for the past thirty (30) years.

21.    Defendant Felipe Flores Rolón is an individual residing in Puerto Rico with postal address at #33 Camino Tortolas, Sabanera, Dorado, Puerto Rico, 00646. Defendant Flores is Vice President of Marketing at SARCO where he has worked for the past seventeen (17) years.

(Defendants named in paragraphs 11-21 are collectively referred to as "alleged minority shareholders")

### III.
### NATURE OF THE ACTION

6

22.     This is a civil action for securities fraud in violation of Section 10(b) of the 1934 Securities Exchange Act, 15 U.S.C.A. §78 j (b) and or SEC Rule 10b-5, 17 C.F.R. §240, 10b-5, promulgated thereunder.

23.     Plaintiffs also seek declaratory relief and request a speedy hearing which may be granted under the Declaratory Judgment Act, 28 U.S.C. §§2201-2202 and Rule 57 of the Federal Rules of Civil Procedure for the declaratory action.

24.     Plaintiffs request the Court to issue a declaratory judgment finding that Gómez and Cook own 25% participation in the Companies. Plaintiffs request that said judgment declare that the Companies do not have minority shareholders and that the alleged minority shareholders do not own any participation in the Companies.

25.     Plaintiffs Cook and Gómez request a finding that the Defendants' intentional, fraudulent and malicious actions and omissions constitute securities fraud Under Section 10(b) of the 1934 Securities Exchange Act, 15 U.S.C.A. §78j(b) and or SEC Rule 10(b)-5, 17 C.F.R. §240.10b-5, and are liable for all damages resulting from said violation that include all attorney's fees and expenses to be incurred to prosecute this case in an amount no less than $150,000.00.

26.     Plaintiffs Cook and Gómez request that the Court order CGC and GOI the immediate payment of $424,000.00 which sum is equivalent to Cook and Gómez's withheld dividend.

27.     Defendants must pay prejudgment interest on Cook and Gómez's withheld funds which total $424,000.00 and Larrea French and Larrea Olozaga must be barred from acting as officers or directors of CGC and GOI. Likewise, Defendant Jacobo Ortiz

Murias and any and all other Defendants, must be barred from acting as Secretary, officers, or directors of CGC and GOI.

28.    Plaintiffs, as shareholders and on behalf of CGC and GOI, also seek to recover damages for breach of fiduciary duties, conflict of interest and ultra vires acts from Defendants Larrea French and Larrea Olozaga in an amount not less than $300,000.00.

**IV.**
**STATEMENT OF FACTS**

**A.    Defendants' Larrea French and Larrea Olozaga's fraudulent and malicious statements and misrepresentations**

29.    On February 13, 2013 and September 17, 2013, Larrea French sent two letters through regular mail to eleven individuals (Defendants named in paragraphs 11-21). Larrea French signed the letters as President of the Board of Directors of CGC.  In these communications, Larrea French intentionally and fraudulently misrepresented that in 2008 the **four**[1] members of the Board of Directors of CGC and GOI had agreed on a "final list of shareholders" and that in 2009 the board members "prepared a minority shareholder agreement".

30.    Defendants Larrea French and Larrea Olozaga have fraudulently and maliciously stated and misrepresented in multiple communications through regular mail, electronic mail, telephone communications and through documents filed in the Puerto Rico Court of First Instance, notified to the Co-defendants (alleged minority shareholders) and

---

[1] **In 2008, CGC only had three (3) members on the Board of Directors (Cook, Gómez and Larrea French). Larrea Olozaga did not become a Director until April 28, 2010.  Larrea French knew that this was false but made such representation to manipulate and cause the "alleged minority shareholders" to present a claim against Cook, Gómez, and the companies. Larrea French's actions are intentional, reckless and in total disregard to the corporations and to its shareholders' best interests.**

Plaintiffs through regular and certified mail, that CGC and GOI approved the issuance of 16% share participation to eleven individuals, also Defendants in this action, who are family members, agents, employees in other businesses, and business associates of the Larreas.

31.     In said communications, Larrea French and Larrea Olozaga have also fraudulently and maliciously stated that the 16% participation, allegedly issued to the eleven individuals, has been paid in full or partially; that Plaintiffs Cook's and Gómez's shares have been reduced from 25% to 21%, each; and that 16%, $848,000.00, of a recent $5.3 million declaration of dividends, belong to the eleven individuals who they fraudulently allege are minority shareholders of CGC and GOI.

32.     Defendants Larrea French and Larrea Olozaga's cause the withholding of $424,000.00 that belong to Cook and Gómez.  Defendants Larrea French and Larrea Olozaga's fraudulent scheme to give away 16% of the Companies' shares, without the Board of Directors' approval and without due consideration, constitutes securities fraud and is maliciously designed to dilute Cook and Gómez's participation in the Companies, oppress them and buy them out at a reduced price.

33.     Defendants Larrea French and Larrea Olozaga have fraudulently and maliciously caused and manipulated the eleven individuals, Co-Defendants named in paragraphs 11-21, to present fraudulent claims in the Puerto Rico Court of First Instance, Civil Case DAC2014-1549(506). Larrea French and Larrea Olozaga's actions constitute securities fraud in violation of Section 10b of the 1934 Securities Exchange Act, 15 U.S.C.A. §78j (b), and/or SEC Rule 10b-5, 17 C.F.R. § 240, promulgated thereunder.

34.     The Co-Defendants named in paragraphs 11-21, fraudulently and maliciously filed fraudulent claims in the Puerto Rico Court of First Instance, Civil Case DAC2014-1549(506), notified through regular and certified mail, and stated in numerous telephone, email and regular mail communications that they are minority shareholders of the corporations and allege that they have paid in total or partly for such shares with work and services.

35.     On June 10, 2014, when the Co-Defendants named in paragraphs 11-21 filed the Declaratory Judgment action in Civil Case No. DAC 2014-1549, they had knowledge that the Board of Directors of CGC and GOI were composed of only three members (Cook, Gómez and Larrea French) in 2008, that the Board of Directors did not approve a change of corporate structure of the companies, that a "final" list of proposed shareholders was never approved, nor the percentage of contemplated shares.  The Co-Defendants named in paragraphs 11-21 know that they are not shareholders of CGC and GOI and that they never received a valid offer from Larrea French.[2]  The Co-Defendants actions constitute securities fraud in violation of Section 10b of the 1934 Securities Exchange Act, 15 U.S.C.A. §78j (b), and/or SEC Rule 10b-5, 17 C.F.R. § 240, promulgated thereunder.

---

[2] **Defendant Gilberto Marxuach served as Secretary of the Boards of Directors of CGC and GOI from 2004 until December 2008 and Jacobo Ortiz Murias took over as Secretary of the Boards of Directors of CGC and GOI commencing in January 2008 until present.   Defendants Marxuach and Ortiz Murias knew, when they received Larrea French's letters and when they filed the Complaints, that the Boards of Directors of CGC and GOI were not composed of 4 members but 3 and they also had knowledge of all Board actions and Resolutions approved by the Boards and that no action had been approved for the inclusion of minority shareholders or the issuance of minority shares. Defendant Gilberto Marxuach also knew that Cook and Gómez did not agree to the new By-Laws or the documents required for the change in corporate structure that would have allowed for the issuance of class b stocks. Defendants Marxuach and Ortiz Murias clearly know that they are not stockholders of the companies.**

**B.** **Alleged Minority Shareholders' Claims and Plaintiffs Request for Declaratory Judgment Finding That Gómez and Cook Own 25% Participation In The Companies and that the Companies Do Not Have Minority Shareholders, and that the Alleged Minority Shareholders Do Not Own Any Participation In The Companies**.

36.    On December 31, 2013, the Co-Defendants, alleged minority shareholders, filed a Complaint for Declaratory Judgment, in the Puerto Rico Court of First Instance, San Juan Part, Civil Case No. KPE-2013-5152. This case was dismissed without prejudice for failure to serve process on Defendants. On June 10, 2014, the alleged minority shareholders, the Defendants named in paragraphs 11-21 above, filed a Complaint for Declaratory Judgment, Breach of Contract and Promissory Estoppel, this time before the Puerto Rico Court of First Instance, Bayamón Part, Civil Case No. DAC2014-1549 (506), against Cook, Gómez, Larrea French, Larrea Olozaga and the Companies.

37.    The Co-Defendants, alleged minority shareholders, claim that they are minority shareholders of the Companies who, together, own 16% participation in the Companies. They also allege that Cook and Gómez only own 21% participation, each, in the Companies.

38.    The alleged minority shareholders state in their complaint that from 2008 through 2012, Larrea French assured them that they were minority shareholders of the Companies.

39.    The alleged minority shareholders also state that their inclusion as minority shareholders was contingent upon CGC and GOI's execution of new corporate documents and that this never occurred and that they were waiting for instructions in order to "finalize their participation" in the Companies.

40.     The alleged minority shareholders claim to have contributed with work and services for their participation in the Companies but admit that they have not paid any sums of money for their alleged minority shares.

41.     The alleged minority shareholders presented the following documents to be considered by the Court for its determination and declaration of their rights as shareholders of the corporations:[3]

> i.      E-mail from Gómez to Larrea French dated April 24, 2008
> ii.     E-mail from Larrea French to Gómez dated April 24, 2008 at 2:37 pm
> iii.    E-mail from Larrea French to Gómez dated April 24, 2008 at 9:01 pm with attachment
> iv.     Letter dated February 13, 2013 from Larrea French to Gilberto Marxuach
> v.      Letter dated August 29, 2013 from Alex D. Cerda to Larrea French
> vi.     Letter dated August 5, 2013 from Ivelisse Borrero de Cordovés to Larrea French
> vii.    Regular mail letter dated August 16, 2013 from Arturo Fernández to Larrea French
> viii.   Regular mail Letter dated August 2, 2013 from Felipe Flores Rolón to Larrea French
> ix.     Regular mail Letter dated August 21, 2013 from María and Gerardo Larrea French to Larrea French
> x.      Regular mail letter dated October 8, 2013 from Gilberto Marxuach to Larrea French
> xi.     Regular mail letter dated August 27, 2013 from Jacobo Ortiz Murias to Larrea French
> xii.    Regular mail letter dated May 30, 2013, from Aniceto Solares to Larrea French
> xiii.   Regular mail letter dated June 24, 2013 from Fernando Toro to Larrea French
> xiv.    E-mail dated August 26, 2013 from Luis Arenas to Larrea French
> xv.     11 Regular mail letters dated September 17, 2013 from Larrea French to each one of the eleven alleged shareholders.  **(Exhibit 1)**

42.     None of the above listed documents establish that the alleged minority shareholders are in fact shareholders. To the contrary, the documents clearly establish

---

[3] **The documents which accompany this Verified Complaint as Exhibits 1-3 are being filed as originally written in the Spanish language. Plaintiffs respectfully request from this Honorable Court that it accept these and allow translations to the English language to be filed as soon as they are received from the certified translator.**

that Gómez never agreed to the shareholders list proposed by Larrea French or to the percentage of shares that Larrea French pretended to give them. Cook never agreed either.  These documents also establish that Larrea French was the only Board member who misrepresented and stated that CGC approved the issuance of shares to the alleged minority shareholders. Larrea Olozaga, who became a Board member in April 2010, intentionally joined and supported Larrea French's misrepresentations and fraudulent plans in an Answer to Complaint and Counterclaim presented in Civil Case No. KPE2013-5152.

43.    Furthermore, Larrea French and Larrea Olozaga have a conflict of interest and were estopped from participating in the determination of whether the Companies offered shares to these individuals. Two of them, María Larrea French and Francisco Gerardo Larrea French are the son and daughter of Larrea Olozaga and sister and brother of Larrea French. The others are all business associates or employees in businesses of the Larreas.  The Larreas have expressed that they wanted to "give them" CGC shares in consideration of the service and dedication to SARCO and PT, companies in which Larrea Olozaga and Larrea French are majority shareholders.

44.    The list attached to Larrea French's April 24, 2008, email communication to Cook and Gómez presented by the Co-defendants in support of their Complaint for Declaratory Judgment indicates that:

- F. Gerardo Larrea would have **20%** of the shares while the alleged minority shareholders claim in their Complaint for Declaratory Judgment **(Exhibit 2)** that Larrea Olozaga owns **21%** of the shares.

- Likewise, Larrea French and Larrea Olozaga alleged in the Answer to Complaint and Counterclaim **(Exhibit 3)** filed in Civil Case No. KPE2013-5152, page 2 paragraph 5, that Larrea Olozaga owns **21%** participation. In addition, at page 25 paragraph 49 of the Answer to Complaint and Counterclaim, Larrea French and Larrea Olozaga alleged that the minority shareholders **"have paid in whole or part"** for their participation **"with their work and services"** while the list assigns **monetary contributions and <u>does not</u> provide or allow for payment with work and services.**

- The list does not provide what type of shares would be issued or the shares' rights, preferences, limitations and restrictions.

- **<u>The alleged final list does not include Defendant Aniceto Solares</u>**.

- María Larrea French's percentage of shares included in the list is 2%, while paragraph 7 of the Bayamón and San Juan Complaint for Declaratory Judgment alleges 0.5% participation

- Gerardo Larrea French's percentage included in the list is 1% while paragraph 6 of the Bayamón and San Juan Complaint for Declaratory Judgment alleges 0.5%.

**Certainly, this list does not contain a <u>final</u> agreement regarding the proposed issuance of minority shares. [4]**

45.    On February 13, 2013, Larrea French sent a letter through regular mail to each of the eleven alleged minority shareholders informing that Cook and Gómez denied the

---

[4] **On May 2, 2008, Larrea French sent Gómez and Cook via email another list which he claimed to be the "final" shareholders list. In this new list Larrea Olozaga had 20% participation, Aniceto Solares was included with 2% participation and María Larrea French and Gerardo Larrea French had 1% participation each. Neither Cook nor Gomez agreed to this new list either.**

existence of any minority shareholders. Larrea French signed the letters as Chairman of the Board of Directors of the Companies  In these communications, Larrea French fraudulently misrepresented that in <u>2008</u> "**the four**" (**there were only 3 until April 2010) Board members** had agreed on a **"final list of shareholders"** and that, in <u>2009</u>, the **four** board members prepared a minority shareholder agreement. **In this communication, Larrea French also confirms that he and Larrea Olozaga created a deadlock on the declaration and distribution of dividends due to Cook's and Gómez's denial of the existence of minority shareholders.**

46.     Pursuant to CGC's and GOI's Stock Book, Certificates of Incorporation, Exhibit C to the Development and Franchise Agreement**,** Exhibit I, paragraph 10, to the Development and Franchise Agreement, Credit Agreement, Article 7 and 7.11, page 32, September 30, 2004 and October 7, 2004, letter from attorneys, McConnell Valdés, on CGC's behalf to Krispy Kreme Doughnut Corporation ("KKDC"); and the Stock Redemption Agreement **(Exhibit 4),**  Plaintiffs request this Honorable Court to declare that CGC has only one shareholder, GOI, and that GOI has four shareholders (Cook, Gómez, Larrea French and Larrea Olozaga), who own 25% participation each and that the Companies do not have minority shareholders. Plaintiffs also request this Honorable Court to declare that $424,000.00 of the declared and undistributed dividends are unduly withheld and belong to Cook and Gómez.

## C.     Origin of Caribbean Glaze Corporation, Glaze On Investment, Inc., and the Krispy Kreme Franchise in Puerto Rico

47.     In 2001, Plaintiff Gómez attended a conference held in New York where she met up with Plaintiff Cook, who was also attending the conference. During the conference,

Plaintiffs Cook and Gómez met a Krispy Kreme franchisee, who Cook had previously met, who recommended the brand and provided them contact information for the franchisor.  Cook and Gómez discussed with Larrea French the possibility of obtaining the Krispy Kreme franchise and together decided to pursue it.

48.    Cook first contacted KKDC's top management on June 13, 2001, through an email to Don Henshall, President of the International Division of KKDC, where Cook expressed his interest in discussing an Area Development Agreement for Puerto Rico.

49.    Following further negotiations, Cook, Gómez and Larrea French presented their business plan to different high level executives at KKDC offices in Winston-Salem, North Carolina.

50.    Cook, Gómez and Larrea French spent considerable time, effort and money of their own to obtain the franchise. They prepared and gave presentations, and they traveled numerous times to North Carolina, Chicago, New York, Las Vegas and the Bahamas, at their own cost, in pursuit of negotiating and obtaining the franchise. Larrea Olozaga did not participate in any of these trips nor did he participate in any negotiations with KKDC. He did attend one meeting held in Puerto Rico with Cook, Gómez, Larrea French and KKDC representatives.

51.    The agreement between Cook, Gómez and Larrea French was that the three would have equal participation in the business, 33.3%; however, later on consideration was made for Larrea French's father, Larrea Olozaga, since Larrea French contributed his father's business goodwill as franchise owner in Puerto Rico with broad experience in the local market and introducing, expanding and managing different restaurant franchises in Puerto Rico.

52.     Throughout the negotiations with KKDC, Cook coined the name "Larrea Group" to refer to the group composed by himself, Gómez, Larrea French and the different franchises in Puerto Rico in which Defendant Larrea French and/or his father, Larrea Olozaga, were a shareholder or director, including the brands Church's Chicken, Pollo Tropical, Chili's and Romano's Macaroni Grill.

53.     The "Larrea Group" goodwill was used by Larrea French, Cook and Gómez as leverage to obtain the Krispy Kreme franchise in Puerto Rico, but it was always specified to KKDC that the principals in the business would be Cook, Gómez and Larrea French**.**

54.     In consideration for his "Larrea Group" goodwill contribution, Cook, Gómez and Larrea French later on included Larrea Olozaga as equity partner and principal, with twenty-five percent (25%) participation in the business.   Larrea French expressed that Larrea Olozaga would be a "passive shareholder" and it was under this condition that Cook and Gómez accepted Larrea Olozaga with 25% participation in the business.

55.     On June 20, 2003, an application for a Certificate of Incorporation for Caribbean Glaze Corporation was filed with the Division of Corporations of the Puerto Rico Department of State on behalf of Cook, Gómez and Larrea French by their legal firm at the time, McConnell Valdés. The incorporator was attorney Gilberto Marxuach Torros, a junior partner at the firm. **McConnell Valdés was paid for these services.**

56.     The number and class of authorized capital stock of CGC was 1,000,000 shares of common stock at $1.00 par value.

57.     On July 31, 2003, KKDC extended a Letter of Intent for the development of Krispy Kreme in Puerto Rico. KKDC's intention was that the franchise would be

assigned to CGC. The initial ownership of CGC would be 70% by the "Larrea Group" (or a "Larrea Group" affiliate) and Krispy Kreme International Ltd. (or a Krispy Kreme affiliate) would own 30% of CGC.  The granting of the franchise rights would be subject to the signing of a Shareholder's Agreement and a Development and Franchise Agreement.

58.    The Letter of Intent provided that CGC would have a Board of Directors of which Krispy Kreme International, Ltd. would have two members and the "Larrea Group" would have 3 members.

59. The Letter of Intent also included the following as material matters that would require 100% vote of the Board: the establishment of any profit sharing program, any share option program,  the issuance of any shares or other securities including options, preference shares or convertible notes, any changes to the Shareholder's Agreement, increase the amount of the Company's authorized share capital or redeem or purchase any of its shares, vary its constitution or the rights attaching to its shares.

60.    On August 7, 2003, Larrea French signed the letter of intent on behalf of Cook, Gómez and Larrea Olozaga with KKDC.

61.    Cook, Gómez, Larrea French and Larrea Olozaga agreed that the 70% ownership of CGC would be represented, not by the "Larrea Group" or a "Larrea Group" affiliate, but by a new corporation that they would name Glaze On Investment, Inc.

62.    On May 17, 2004, an application for a Certificate of Incorporation for GOI was filed with the Division of Corporations of the Puerto Rico Department of State on behalf of Cook, Gómez, Larrea French and Larrea Olozaga by attorney Jacobo Ortíz Murias, who had three of his office assistants (Brunilda Maldonado Rodríguez, Rosa Colón

Vázquez and Gladys Olivencia Sosa) sign as incorporators. The number and class of authorized capital stock of GOI was 1,000,000 shares of common stock at $1.00 par value. **Attorney Jacobo Ortíz Murias was paid for his services.**

63.     On July 22, 2004, the Krispy Kreme Doughnuts Development and Franchise Agreement for Puerto Rico ("KK Development and Franchise Agreement") was executed pursuant to a joint venture between KKDC and GOI.  KKDC would own a 30% and GOI 70% equity interest in CGC, who would own the Krispy Kreme franchise in Puerto Rico.

64.     Pursuant to the KK Development and Franchise Agreement, Cook was appointed Managing Director, President and General Manager of CGC.

65.     As Managing Director, Cook was required by KKDC to devote full time efforts to developing Krispy Kreme stores and the Krispy Kreme brand in Puerto Rico.

66.     On July 22, 2004, a Shareholders' Agreement was executed by and among KKDC, GOI and CGC. Pursuant to the Shareholders' Agreement, Cook, Gómez and Larrea French were appointed to CGC's Board of Directors in representation of GOI while Jimmy Strickland and John Tate were appointed as CGC Directors representing KKDC.  Larrea French was appointed Chairman of the Board of Directors.

67.     On October 7, 2004, CGC's Board of Directors approved a resolution to issue 150,000 shares to KKDC in exchange for $150,000.00 cash contribution and 350,000 shares at a cash purchase value of $350,000.00 to GOI. The subscription agreements were duly executed and the corresponding stock certificates were issued on even date therewith.

68.     To fund GOI's purchase of the CGC shares, each of the GOI Shareholders (Cook, Gómez, Larrea French and Larrea Olozaga) capitalized GOI with $87,500.00 for a total investment of $350,000.00.

69.     On October 7, 2004, four certificates for 87,500 shares were recorded as issued in GOI's Stock Book to Juan A. Larrea French certificate number 1, F. Gerardo Larrea certificate number 2, Ellysmar Gómez certificate number 3 and John Cook certificate number 4.

70.     In Exhibit C to the KK Development and Franchise Agreement, Larrea French certified that the only CGC Shareholders were GOI, Cook, Gómez, Larrea French and Larrea Olozaga.

71.     Likewise, in Exhibit I, paragraph 10, to the KK Development and Franchise Agreement, Larrea French represented and warranted that all of its Owners and their interests in the Company were completely listed in Exhibit C to the Agreement and that the Company shall make, sign, and deliver to KKDC and HDN Development Corporation ("HDNDC") such revisions thereto as may be necessary during the term of the Agreement to reflect any changes in the information contained therein.

72.     The CGC Shareholders' Agreement was subsequently amended to reflect changes or substitutions of the KKDC representatives in the CGC Board of Directors

73.     On September 30, 2004 and October 7, 2004, CGC's attorneys, McConnell Valdés, made the following representation to KKDC on CGC's behalf:

> "There are no outstanding or authorized options, warrants, rights, contracts, calls, puts, rights to subscribe or other agreement or commitments to which the Company is a party or which are binding upon the Company (other than the Agreement) providing for the issuance or redemption of any of its capital stock."

74.     In July 2006, due to a KKDC company restructuring, KKDC decided to withdraw from the CGC Shareholders Agreement and terminate the joint venture. CGC would continue to own the Krispy Kreme franchise in Puerto Rico pursuant to the KK Development and Franchise Agreement.

75.     CGC's Board of Directors approved a resolution that enabled the execution of a stock redemption agreement and the corresponding resignation of KKDC representatives to CGC's Board of Directors, subject to the transfer of $150,000.00 from CGC to KKDC.

76.     Although Larrea French discussed with Cook and Gómez the possibility of integrating certain individuals as minority non-voting shareholders, the idea never came to fruition and to fund CGC's purchase of KKDC's shares, the four and only existing shareholders, Cook, Gómez, Larrea French and Larrea Olozaga, lent CGC **$45,000.00** each.

77.     The redemption agreement and the termination of the CGC Shareholder's Agreement was effective on July 13, 2006.

78.     Upon confirmation of receipt by KKDC of the $150,000 wire transfer proceeds, Louis B. Tischler, Jr., CGC's attorney in Chicago, forwarded several documents related to the dissolution of the joint venture including the Stock Certificate endorsed for transfer and the resignation of KK representative Directors in CGC's Board. **Tischler advised CGC that it would be necessary for CGC to immediately prepare and have executed appropriate corporate actions reducing the number of directors from five to three in number.**

79.     CGC's Board of Directors (Cook, Gómez and Larrea French) decided to obtain a loan for the purpose of financing capital expenditures to be incurred in the design, development, construction and equipping of a commissary and three or more Krispy Kreme stores and to finance working capital needs and satisfy fees, costs and expenses incurred.

80.     On August 4, 2006, CGC entered into a Credit Agreement with FirstBank Puerto Rico for a non-revolving loan credit facility of up to $5 million.

81.     In order to obtain the financing, CGC executed various Security Agreements in favor of FirstBank Puerto Rico granting a security interest upon all personal property pertaining to CGC stores in Caguas, Guaynabo and Dorado.

82.     CGC also executed Leasehold Mortgages in favor of FirstBank Puerto Rico.

83.     The Credit Agreement was executed by Larrea French as Chairman of the Board of CGC since Cook, President of CGC was not in Puerto Rico at the time.

84.     No personal guarantees were required nor provided to FirstBank Puerto Rico to secure the Credit Agreement.

85.     In the Credit Agreement, Larrea French represented that CGC only had one Shareholder, GOI, and that CGC would not, without the previous written consent of Lender, change the voting rights of any class of stock, (ii) issue or contract to issue any additional shares of stock:

> Article 7
> Negative Covenants
> So long as the Note shall remain unpaid, Borrower will not, without the previous written consent of Lender, which consent shall not be unreasonably withheld, conditioned, delayed or denied:
> …
> 7.11    Issuance of Shares: Transfer

(i)   Change the voting rights of any class of stock, (ii) issue or contract to issue any additional shares of Stock, (iii) permit or suffer any transfer of Stock of Borrower that, would, in each case change the presently existing controlling interest in the outstanding Stock of Borrower. (Credit Agreement del 4 de agosto de 2006, página 32, cláusula 7.11)

86.   Since the execution of the Credit Agreement on August 6, 2006, to this day, GOI and CGC have not notified nor requested consent from FirstBank Puerto Rico to change the voting rights of any class of stock or to issue or contract to issue any additional shares of stock.

87.    Between July 19, 2006 and April 23, 2008, Cook, Gómez, Larrea French and Larrea Olozaga did not revisit or discuss the idea of incorporating minority shareholders or the issuance of any shares to additional shareholders.

**D.   Beginning of Plan to Defraud Shareholders Cook and Gómez**

**i.   Usurpation of Business Opportunity, Conflict of Interest and Breach of Fiduciary Duty of Loyalty related to the purchase of the Caguas Property**

88.   CGC was scheduled to open its first Krispy Kreme store in Puerto Rico.  To locate potential commercial property sites on behalf of CGC, Larrea French procured the services of Defendant Fernando Toro. Defendant Toro is a realtor and President of Property Concepts, a commercial real estate company affiliated with Cushman Wakefield and local real estate representative for Kimco Realty.  Defendant Toro showed Larrea French various properties that were available for rent or sale.

89.   On or around November 2005, Cook and Gómez became aware of the opportunity to purchase a commercial property from Walmart in Barrio Bairoa, Caguas. Larrea French forwarded to Cook and Gómez an email from Walmart saying Walmart was marketing the property and accepting offers**.** In a June 24, 2013 letter from

Defendant Toro to Larrea French, Toro confirms that he presented Cook, Gómez and Larrea French the Caguas property for the Krispy Kreme Store.

90.     Cook, Gómez and Larrea French became interested in the property in Caguas for the location of the Krispy Kreme store. Cook and Gómez believed that it was a good location and that purchasing the property, rather than renting, was a beneficial business opportunity for CGC's Krispy Kreme franchise. Cook and Gómez told Larrea French that CGC should buy the property and expected to purchase it.

91.     CGC was financially able to undertake the opportunity of purchasing the property.

92.     In the franchise business, owning the commercial property on which the franchise store operates provides multiple advantages, including: building equity in the property, not being tied down to a long-term lease, not having to pay overage (percentage) rent, freedom to modify the building structure or site layout without the need for Landlord approval, etc.

93.     Rent expense is generally the higher between a base rent and an overage rent (based on percentage of net sales); however, since this was the first Krispy Kreme store to open in the Puerto Rico market, it was expected to have high sales and thus a higher overage payment which justified even more the purchase of the property by CGC.

94.     Instead of permitting CGC to acquire the Caguas property, Larrea French insisted that the property "belonged to SARCO", and consequently, on August 17, 2007, Larrea French purchased the property for **$932,216.87** through SARCO of which Larrea French and Larrea Olozaga are majority shareholders and President and CEO,

respectively. (Defendant Arenas is the only other shareholder of SARCO with a 6% equity stake.)

95.    On April 2, 2008, Larrea French had CGC rent the property from SARCO through an executed Deed of Lease for a period of twenty years. Pursuant to the Lease, the annual minimum basic rent would be $85,000.00 for each of the first 5 years, followed by $95,200.00 for each of years 6 through 10, then $106,624 for each of years 11 through 15, and finally $119,418.88 for each of years 16 through 20.

96.    In addition to the annual minimum basic rent, CGC would also have to pay percentage rent, calculated as the amount in which the annual net sales multiplied by 5% exceeds the annual minimum basic rent for that particular year.

97.    Later on, SARCO "transferred" the property to another corporation, South American Capital Corp ("SARCAP"), a corporation also owned by Larrea French and Larrea Olozaga. Defendant Luis Arenas is also a 6% shareholder of SARCAP.

98.    Before executing the Deed of Lease for the Caguas property, Larrea French represented to Cook and Gómez that they would also acquire shares in SARCAP; however, Larrea French later reneged and expressed that Larrea Olozaga had changed his mind with regard to Cook and Gómez's participation in SARCAP and that since the offer had not been made in writing it was not binding.

99.    CGC has paid SARCO/SARCAP percentage rent on the Caguas property every year since the store first opened in 2008. By May 2011, three years after the opening of the Caguas Store, CGC had paid SARCO/SARCAP over **$1,000,000.00**.  The purchase of the Caguas property by SARCO/SARCAP represents a usurpation of CGC's business opportunity, a conflict of interest, "self-dealing" and a breach of fiduciary duties

and loyalty. It also represents an unjust enrichment of $608,000.00, to this date, that is unfairly prejudicial to CGC and in disregard to the interests of Cook and Gómez as shareholders of CGC.

ii.     **Larrea French and Larrea Olozaga's Conflict of Interest Related to the "Shared Services Agreement" and Fees**

100.   Larrea French and Larrea Olozaga designed a "Shared Services Agreement" model whereby SARCO would provide services to other Companies in which they are also shareholders, including CGC, for a "nominal" monthly fee.

101.   The services included: administration, accounting, human resources/payroll, marketing, purchasing, real estate, maintenance and construction. The model contemplated utilizing SARCO's employees to provide services to CGC and other Companies and have them pay for a percentage of said employees' salaries and benefits.

102.   Defendant Felipe Flores, for example, was SARCO's Marketing Vice-President and provided CGC services under the "Shared Services Agreement".  Defendants Francisco Gerardo Larrea, Ivelisse Borrero de Cordovés and Arturo Fernández were also SARCO employees who provided CGC services under the "Shared Services Agreement" and were paid salaries for their work.

103.   Pursuant to the "Shared Services Agreement", CGC paid SARCO over $600,000.00 in a period of two years.

104.   On or about November 2009, CGC's Board of Directors (Cook, Gómez and Larrea French) met to discuss the "Shared Services Agreement". Cook and Gómez believed that the arrangement was too costly for CGC and that the shared services that

the SARCO employees were providing were no longer adequate to satisfy the needs of the Krispy Kreme business. By March 2010, CGC had already opened 2 stores. On or about December 2009, CGC's Board of Directors agreed to a plan to terminate all services then being provided by SARCO under the "Shared Services Agreement". Larrea French was emphatic that the termination would apply to all services provided by SARCO and that they could not "pick and choose" which services to terminate. Cook, Gómez and Larrea French (CGC's Board of Directors) decided to terminate all services under the "Shared Services Agreement".

105.   Larrea French informed Larrea Olozaga that CGC's Board had determined to terminate the "Shared Services Agreement". As CEO of SARCO, Larrea Olozaga opposed for months the termination of the management of CGC executive payroll which was controlled from his personal office. Larrea Olozaga unilaterally refused to permit the transfer of the management of CGC's executive payroll to CGC. Larrea Olozaga even went as far as to instruct Automatic Data Processing, Inc. ("ADP"), a payroll services provider, not to transfer any of the payroll data or files to CGC. ADP is the company subcontracted by SARCO to physically process the executive payroll according to the instructions provided to it by Larrea Olozaga's office. Larrea Olozaga misrepresented and claimed to ADP that he had more authority than the President and CEO of CGC.  At that time, Larrea Olozaga was not on the Board of Directors of CGC nor was he an officer of CGC.

106.   On March 24, 2010, Larrea Olozaga summoned Gómez and advised her that he opposed transferring of the management of CGC's executive payroll over to CGC and that the Board of Directors had to change this decision.

107.   Later, on that same day, Gómez and Cook had a telephone conference with Larrea French to discuss his father's refusal to transfer the management of the executive payroll to CGC.   Despite the fact that Larrea French had agreed to the termination of the Shared Services Agreement and that he himself designed the plan for termination, Larrea French threatened Cook and Gómez and warned that they were "playing with fire", that "what they were doing could have consequences in the future", "that what they were doing was dangerous" and "that the decisions that Cook and Gómez took did not represent 50% of the shareholders' interests", also ignoring the fact that Cook and Gómez did represent 2/3 majority of the Board of Directors.   Larrea Olozaga and Larrea French are majority shareholders in SARCO and their interest in the "Shared Services Agreement" also represented a conflict of interest, "self-dealing" and a breach of fiduciary duties and loyalty that was unfairly prejudicial to CGC and in disregard to the interests of Cook and Gómez as shareholders of CGC.

     iii.   **Larrea French's Unilaterally Proposed Change of GOI and CGC Corporate Structure, Removal of Cook as President and CEO, Named Himself President and CEO and Dilution of Cook's and Gómez's participation by attempting to incorporate minority shareholders with 16% participation.**

108.   On April 18, 2008, Larrea French and Defendant Gilberto Marxuach had a telephone conference call with attorney Pablo Rodriguez from the law firm of O'Neill & Borges, and requested a "list of steps to follow regarding CGC and GOI".

109.   On April 21, 2008, attorney Pablo Rodriguez sent Defendant Larrea French and Defendant Gilberto Marxuach a Memorandum containing the "requested list".   The list consisted of Resolutions and Corporate Documents that were necessary in order to

change the Board of Directors of CGC and GOI, Resolutions necessary to merge GOI and CGC into one company and documents necessary to amend CGC's Certificate of Incorporation to allow for the issuance of class a and class b shares, among others.

110.    Defendant Larrea French did not share the Memorandum with Cook or Gómez or inform them of the telephone conference.

111.    On April 23, 2008, Larrea French sent an e-mail communication to Cook and Gómez, who was on vacation in Indonesia. Larrea French attached a list of proposed minority shareholders and advised:

"Please verify the list of shareholders and send me your comments. D. Gerardo has not given his comments yet, so it is subject to his final wishes. The following people have decided to bail out: Louis Tischler and Gabriel Salvat. Pending confirmation we have Luis Arenas, William Morales and Anita Larrea. I have added two potential investors, Alex and Ivelisse, please give me your thoughts. The table assumes that the four founding partners will have 80% of the common shares (with voting rights) and the remaining 20% common shares (non voting) will be allocated to the minority shareholders. I am working with Gilberto on this and would like to finish before the week of the opening (which is something Jerry [Larrea Olozaga] asked me to do) "

Thank You,

TL

P.S. We (Jerry [Larrea Olozaga], Ellysmar, John and Tony) have contributed $530,000 ($87,500 +$45,000 each). The minority shareholders need to contribute there (sic) 20% which is $132,500. The total equity is $662,500."[5]

112.    On April 24, 2008, Gómez answered Larrea French's April 23, 2008 e-mail communication via e-mail stating:

"Thank You for sending the list. I will carefully review it and give you my full feedback as soon as possible. However, I would like to point out now that, as I recall, the minority

---

[5] **Note that in this April 23, 2008, communication, Larrea French alleges that "D. Gerardo [Larrea Olozaga] has not given his comments yet, "so it is subject to his final wishes" when Larrea Olozaga was not a member of the Board of Directors and did not have a vote in this decision. Larrea French and Larrea Olozaga fraudulently pretended to "give out shares" to dilute Cook and Gómez participation.**

portion was going to be 10% and not 20%. I strongly prefer to keep my original percentage (22.5%). Do you think we can finalize this discussion among ourselves when I get back? I would greatly appreciate it.

Ellysmar

P.S. I believe the additional $30,000 over the $500k (original capital) was conceived as a loan from us to CGC to be repaid as soon as the company had enough cash."

113.   On April 24, 2008, Larrea French replied to Gómez's email stating that he sent Gómez his originally proposed list in which they would have 16% participation and in his new list they would have 20% participation and that in his opinion that was more than enough.  In regards to Gómez's request that he wait until she returned to discuss the matter, he insisted on deciding at once since he and Larrea Olozaga wanted to resolve the matter before the opening and that any suggestions could be discussed over the phone. (Translation Ours)

114.   Gómez maintained her opposition and again replied on April 24, 2008, via e-mail, insisting that Cook, Larrea French and she had once discussed the possibility of offering 10% or less minority shares.  Gómez explained in her email that originally, since KKD was a partner, the company would have 70% of the shares which represented a smaller amount for distribution. Gómez insisted on maintaining the original percentages since she believed that it was not fair that after all the time and effort invested by the founders their participation would only be represented by a 10:1 ratio with respect to minority shareholders. Gómez also questioned the inclusion of Alex Cerda as a shareholder. Gómez included a list of what she believed could be considered for offering if the decision was made to include minority shareholders.

115.   Larrea French again replied to Gómez's email communication stating that Gómez's recollection was correct, that in fact they had talked about a proposed offer of

minority shares with 10% participation and he confirmed that after the dissolution of the KKDC joint venture they had not discussed the issue. Larrea French insisted on offering 20% participation to minority shares as a sign of goodwill. Larrea French conceded that the founding partners (Cook, Gómez and Larrea French) had done all the work.

116.   Larrea French also alleged that "without SARCO", obtaining the Krispy Kreme Franchise would not have been possible and there were people like Arturo Fernández, who had contributed to what SARCO was today and he wanted to reward him for contributing to his father's company. Larrea French also mentioned Fernando Toro, a real estate agent who helped find the Caguas site, and Alex Cerda, who Larrea stated that he wanted to include in order to keep him motivated since Pollo Tropical is a dog ("limón").

117.   On April 24, 2008, at 9:01 pm, Larrea French sent Gómez and Cook another e-mail communication attaching yet another list of proposed shareholders with different participation percentages and expressed that Gómez's wishes were going to become a reality since nobody wanted to invest in Caribbean Glaze. He stated that some of the proposed shareholders William and Anita Larrea were not interested in investing, that Gerardo and Felipe could only invest 1%; that the majority stockholders would have 21% participation[6].  Larrea French expressed that he had not yet spoken to Ivelisse and Alex and that he wanted to speak to Cook and Gómez beforehand about including

---

[6] Note that Larrea French is the only shareholder and director who insisted on inviting minority shareholders, that the people he considered were all either his family members, business associates, agents and/or employess of his other corporations, and that all his communications during 2008 reflect that he was only inquiring whether such persons were interested in investing in GOI and if they had the financial capacity to make the investment.  These communications also support Plaintiff John Cook's position that Larrea French had conversations with some of his proposed minority shareholders in Cook's presence and that Larrea French only asked about these persons' interest and capacity to invest in GOI. No offer or acceptance was ever made in Cook's presence.

them. Larrea French stated that he believed that Ivelisse would not invest and he did not know if Alex could. That if it kept up that way, they would each have 25% participation. Larrea French asked that Gómez confirm when they could speak the next day. Larrea French did not have Larrea Olozaga's comments either but would also speak to him the next day.

118.   On April 25, 2008, Gómez replied to Larrea French's communication expressing that they could speak in the evening and that she would await his call. **Gómez continued to oppose to Larrea French's contentions.**

119.   Larrea French sent Cook and Gómez two more e-mail communications, on April 28 and May 2, containing two different proposed shareholders' lists.

120.   **Neither Cook nor Gómez (2/3 majority of CGC and GOI's Board of Directors) agreed to Larrea French's April 28 or May 2, 2008, proposed list of shareholders or the issuance of any shares to additional shareholders.**

121.   **Neither CGC's nor GOI's Board of Directors, composed of Cook, Gómez and Larrea French ever issued a Resolution approving or certifying a vote or decision for the issuance of any shares to additional shareholders or authorize Larrea French to extend an offer to anyone.**

122.   After Gómez returned from her vacation in Indonesia and Cook's trip from Miami, Florida, they dedicated 100% of their time to the final details in preparation for the grand opening of the first Krispy Kreme store on May 6, 2008.  CGC and GOI Boards of Directors did not meet or otherwise discuss the proposed new list of shareholders or the issuance of any shares to additional shareholders.

123.   Larrea French did not bring up the issue of the proposed list of shareholders or the issuance of any shares to additional shareholders until seven months later. On December 8, 2008, Larrea French met with Cook and Gómez and handed them several documents that he had unilaterally asked to be prepared:

i. Attorney Pablo Rodríguez's April 21, 2008 Memorandum

ii. Agreement and Plan of Merger of Glaze On Investment, Inc. with and into Caribbean Glaze Corporation

iii. Certificate of Ownership and Merger Merging Glaze On Investment, Inc., into Caribbean Glaze Corporation

iv. Amendment to CGC's Certificate of Incorporation (**since it only provides for one common stock and does not allow for class a or class b non voting stocks as Larrea French was proposing**)

iv. New By laws of Caribbean Glaze Corporation **(that unilaterally increased the number of Directors from 3 to 5 and unilaterally included Defendants Larrea Olozaga and Defendant Gilberto Marxuach as new directors and unilaterally removed John Cook from his CEO position. They also unilaterally provided that Directors would serve one year terms and that the power of CGC's officers would be established by the Board of Directors by way of a Resolution**).

v. A Class A Voting Common Stock Shareholders Agreement (Cook, Gómez, Larrea French and Larrea Olozaga were the only designated class a stockholders)

vi. A Class B. Non-Voting Common Stock Shareholders Agreement

**(Designation of class b non-voting common stock shareholders was left blank, <u>DID NOT INCLUDE ANY NAMES</u>)**

124.   Cook and Gómez did not agree to the unilaterally proposed changes and declined signing them.  For the following twelve months, Larrea French and Larrea Olozaga exchanged various versions of the documents with Cook and Gómez but were

not able to agree on final documents. **At no time did Larrea French and Larrea Olozaga fill in the names of the persons who they proposed would own class b non voting shares.**

125.    On December 2009, negotiations were terminated without an agreement.

126.    On April 13, 2010, attorney Pablo Rodríguez sent Cook, Gómez, Larrea French and Larrea Olozaga an e-mail in which he attached all the documents that were filed in CGC and GOI Corporate Books. **He also attached a copy of CGC's By-laws in which he marked the references or clauses that were no longer in effect after the joint venture with KKDC was terminated.**

### iv.    Defendant Larrea Olozaga's forced entry into Board of Directors

127.    On April 2, 2010, just days after Larrea Olozaga summoned Gómez to his office and demanded that CGC's Board of Directors reverse its decision regarding the management of the executive payroll, and just days after he threatened Cook and Gómez, Larrea French called for a GOI and CGC shareholders' meeting to be held on April 16, 2010. The only people invited to the meeting by Larrea French were the only other existing shareholders, Cook, Gómez and Larrea Olozaga.

128.    Contrary to what Larrea French had cited as the topics to discuss in his April 2, 2010, invitation, Defendant Larrea French informed the Shareholders that the exclusive purpose of the meeting was to vote on increasing the number of the members on the CGC and GOI Boards of Directors from the existing three to four and that Larrea Olozaga be admitted as the fourth director. Defendant Larrea Olozaga recognized that an even number of directors could represent a problem but that they could design a way to resolve possible deadlocks.

129.   Larrea French called Larrea Olozaga's petition to a vote but Cook and Gómez opposed voting at that time since the issue had not been previously included in the meeting's agenda. Larrea French concluded the meeting and refused to consider any other issues on the agenda.

130.   Larrea French called for another GOI/CGC shareholders' meeting to be held on April 28, 2010. Once again, the only shareholders invited to the meeting were Cook, Gómez, Larrea French and Larrea Olozaga.

131.   Larrea French and Larrea Olozaga once again informed the Board that the purpose of the meeting was to request that the number of members of CGC and GOI Boards of Directors be increased from the existing three to four and that Larrea Olozaga be admitted as the fourth director. Cook and Gómez again expressed opposition to increasing the number of directors and to increasing it to an even number.  Cook suggested that Larrea French relinquish his seat to his father, Larrea Olozaga. Cook also suggested that instead of increasing the number of seats on the Board that the Board invite Larrea Olozaga to its meetings to serve as a special advisor.

132.   Larrea Olozaga then, falsely and maliciously, represented to Cook and Gómez that he had not consented or authorized his son, Larrea French, to use his "goodwill" to help obtain the Krispy Kreme franchise (Larrea Olozaga had attended a meeting held in Puerto Rico with the KKDC reps. and he accepted the 25% participation in consideration for his goodwill!). Larrea Olozaga threatened Cook and Gómez "with filing a claim in Court", "that he had consulted with an attorney who advised him that he had a right to be a director on the board" (at that moment he threw an attorney's business card at Gómez) "that Cook and Gómez would lose his goodwill", that he would "apprise  the

bank of the situation and that such action could bring serious economic repercussions" and that "he would also inform the franchisor".

133. After harassing and drilling Cook and Gómez with threats and recriminations, Larrea Olozaga finally broke them and became the fourth director. Cook and Gómez were most concerned with protecting the company against the damage Larrea Olozaga was threatening to cause the company.

v.    **Larrea French and Larrea Olozaga's refusal to liquidate CGC's excessive earnings and exposure to Internal Revenue fine until Cook and Gómez Admitted  the alleged "minority shareholders"**

134.   In 2012, Cook presented motions to the Board of Directors for the declaration and distribution of dividends. Cook distributed to the Directors CGC's financial statements for fiscal year 2012 which showed a dramatic increase in net earnings and advised that a distribution of dividends was required to liquidate excessive retained earnings in order to prevent a potential determination of tax evasion and fine.

135.   Regardless of the opinions and recommendations of CGC's President and CEO, its Treasurer, CGC's external tax legal counsel and independent tax auditors and advisors, Larrea Olozaga and Larrea French did not approve the distribution and declaration of $5.3 million in dividends as calculated by the company's auditors and recommended by management.

136. **Larrea French and Larrea Olozaga conditioned any declaration and distribution of dividends to Cook and Gómez's admittance of the minority shareholders**.

137. After, and since the alleged minority shareholders came forth <u>for the first time</u> and alleged to be minority shareholders of the corporations in their first Complaint for Declaratory Judgment, Cook and Gómez agreed to place in escrow 16% until the Court determined if the Co-defendants were shareholders in Civil Case No. KPE-2013-5152. The declaration and distribution of dividends was required to liquidate excessive retained earnings in order to prevent a potential determination of tax evasion and fine before the end of fiscal year on May 25, 2014.

vi.   **Larrea French and Larrea Olozaga's unfounded insistence on running CGC like a closely held corporation (*corporación íntima*)**

138.   Since Larrea French and Larrea Olozaga were not successful in getting Cook and Gómez to agree to the new "coup d'etat" CGC By-Laws presented on December 8, 2008, Larrea French and Larrea Olozaga have insisted that CGC has to be operated like a family or closely held corporation (*corporación íntima*).

139.   Pursuant to the Puerto Rico General Corporations Law, Articles 14.03 and 14.04, 14 L.P.R.A. §§ 3823 and 3824, (the "Corporations Law" ) a closely held corporation (*corporación íntima*) may be established by including in its Certificate of Incorporation all the requisites provided in Article 1.02 of the Corporations Law and <u>additionally</u>: designating it as a closely held corporation (íntima) in its Certificate of Incorporation; establishing that all shares issued by the corporation, of all types, except those kept by the corporation, will be represented by certificates and choosing to have a limited number of shareholders that will not exceed 75, who will be the registered owners of the shares; all transfers of issued shares will be subject to one or more restrictions permitted by Article 6.02 of the Corporations Law.

140.   In a closely held corporation, the shareholders participate actively in the day to day operation and administration of the company. Larrea Olozaga and Larrea French claim to have the right to participate actively in the day to day operation and administration of the company and demand the right to have direct access to CGC's bank accounts, hold monthly meetings with the officers of the Company and to decide who the President can or cannot hire under his supervision.   Cook and Gómez have opposed Larrea French and Larrea Olozaga's unfounded pretensions.

141.   CGC and GOI are not closely held corporations. CGC and GOI were not established or designated as such in their Certificates of Incorporation nor have any amendments been approved to that effect.

142.   CGC's by-laws establish that the Managing Director shall be the President and Chief Executive Officer of the corporation and that the Managing Director shall be responsible for the general management and control of the business affairs of the corporation and shall have and perform all duties and all powers which are commonly incident to the office of President and Chief Executive Officer, including the general supervision and direction of all officers, employees, and agents of the corporation.

143.   The Board of Directors will provide direction to the Managing Director in regards to the general management and control of the business affairs of the corporation.

144. CGC is a very successful company that has surpassed by almost 100% the profitability targets outlined in its original Business Plan. CGC has been recognized as an outstanding franchisee by Krispy Kreme Doughnut Corporation. CGC has won numerous awards for its outstanding operations, marketing, product development and hospitality. CGC has been designated by KKDC as the official Training Center for Latin

America and has successfully trained numerous managers from the Dominican Republic, Mexico and Colombia. Recognizing CGC's operational excellence, KKDC recently recruited CGC's Marketing Manager to be in charge of Marketing for all of Latin America.   CGC has also proved to be well managed and profitable as it recently declared $5.3 million in dividends.

vii.   **Larrea French and Larrea Olozaga's oppression and attempts to squeeze out Cook and Gómez and dilution of Cook's and Gómez's participation in CGC.**

145.   On June 1, 2012, Larrea French called for a CGC/GOI Shareholders' meeting. Larrea French and Larrea Olozaga presented Cook and Gómez an offer to buy their **42%** shares. Larrea French and Larrea Olozaga alleged that Cook and Gómez only owned 42% of the shares and that 16% belonged to the alleged "minority shareholders". Cook and Gómez refused the offer and denied the existence of any minority shareholders.

146.   Larrea French and Larrea Olozaga recently conditioned the distribution and declaration of a dividend of $5.3 million to holding in escrow 16% ($848,000.00) which they fraudulently claim belong to the alleged "minority shareholders". Larrea French and Larrea Olozaga cause the withholding of $424,000.00 that belong to Cook and Gómez.

viii.   **Larrea French and Larrea Olozaga are estopped from alleging that CGC and GOI have minority shareholders or that Larrea French's alleged verbal ultra vires offer to sell CGC or GOI minority shares is legally binding.**

147.   In numerous documents produced by the corporations in the regular course of business and numerous communications, Larrea French and Larrea Olozaga have stated that they own 50% of the CGC and GOI shares.

148.   As CGC's and GOI's Chairman of the Board, Larrea French has convened numerous Shareholders meetings and not once has he ever invited "minority shareholders".

149.   Larrea French has testified under oath that he believes that an offer to sell shares is not binding unless expressed in writing. Larrea Olozaga has supported this position.

150.   Larrea French has repeatedly stated in recorded meetings of the Board of Directors, that CGC does not have a legal obligation to issue minority shares, but that he has a moral obligation to do so.

## V.

### FIRST CLAIM FOR RELIEF:

**Securities Fraud Under Section 10(b) of the 1934 Securities Exchange Act, 15 U.S.C.A. §78j(b) And Or SEC Rule 10(b)-5, 17 C.F.R. §240.10b-5**

151.   Plaintiffs incorporate by reference all previous paragraphs of the Verified Complaint.

152.   Defendants Larrea French and Larrea Olozaga have fraudulently and maliciously stated and misrepresented in multiple telephone, email and regular mail

communications that CGC and GOI issued 16% share participation to eleven individuals and that Cook's and Gómez's participation has been reduced from 25% to 21% each.

153. Larrea French and Larrea Olozaga have fraudulently and maliciously stated that the 16% participation, allegedly issued to the eleven individuals, has been "paid in full or partially".

154. Larrea French and Larrea Olozaga fraudulently claim that 16% ($848,000.00) of the $5.3 million declared by CGC and GOI in dividends belong to the alleged "minority shareholders".

155. Larrea French and Larrea Olozaga cause the withholding of $424,000.00 that belong to Cook and Gómez. Defendants Larrea French and Larrea Olozaga have fraudulently and maliciously caused the eleven individuals, Co-Defendants named in paragraphs 11-21, to present fraudulent claims in the Puerto Rico Court of First Instance, Civil Case DAC2014-1549(506).

156. Larrea French and Larrea Olozaga's fraudulent scheme is maliciously designed to dilute Cook and Gómez's participation in the Companies, oppress them and buy them out at a reduced price.

157. Larrea French's and Larrea Olozaga's actions and omissions constitute securities fraud Under Section 10(b) of the 1934 Securities Exchange Act, 15 U.S.C.A. §78j(b) and or SEC Rule 10(b)-5, 17 C.F.R. §240.10b-5.

158. Larrea French and Larrea Olozaga must be barred from acting as officers or directors of CGC and GOI.

159. Larrea French and Larrea Olozaga must pay prejudgment interest on Cook and Gómez's illegally withheld funds totaling $424,000.00.

160.   Defendants Gilberto Marxuach's and Jacobo Ortíz Murias's fraudulently and maliciously claim and misrepresent to be minority shareholders of the Companies and fraudulently and maliciously claim to have paid for their participation or shares by providing legal services (the incorporation of the Companies and counsel) and serving as Secretary on the Board of Directors of the Companies. Defendants Gilberto Marxuach, through McConnell Valdés, and Jacobo Ortíz Murias, invoiced their services and were duly paid.  Defendants Gilberto Marxuach and Jacobo Ortíz Murias know that their service as Secretary on the Boards were ad honorem and did not receive compensation.  Defendants Gilberto Marxuach and Jacobo Ortíz Murias were agents of the corporations and as such were subject to a duty not to act or to agree to act during the period of their agency for persons whose interest conflict with those of the corporations in matters in which the agent is employed.

161.   Defendants Gilberto Marxuach and Jacobo Ortíz Murias fraudulent and malicious actions and omissions constitute securities fraud Under Section 10(b) of the 1934 Securities Exchange Act, 15 U.S.C.A. §78j(b) and or SEC Rule 10(b)-5, 17 C.F.R. §240.10b-5.

162.   Defendant Fernando Toro fraudulently and maliciously claims and misrepresents to have paid for his shares by showing CGC prospective locations for Krispy Kreme stores that were available for rent or sale. Defendant Toro is a realtor who is paid a commission for his services once a property is sold or rented. Defendant Fernando Toro fraudulently and maliciously claims and misrepresents to have been offered by CGC and GOI's Board of Directors and or Cook a valid offer for participation in the Companies.

163.    Defendant Fernando Toro's fraudulent and malicious actions and omissions constitute securities fraud Under Section 10(b) of the 1934 Securities Exchange Act, 15 U.S.C.A. §78j(b) and or SEC Rule 10(b)-5, 17 C.F.R. §240.10b-5.

164.    Defendants Felipe Flores, Francisco G. Larrea French, Ivelisse Borrero Cordovés and Arturo Fernández fraudulently and maliciously claim and misrepresent to have contributed to CGC and or to have paid for their shares by providing services to CGC that were included in a "Shared Services Agreement" between SARCO and CGC for which CGC paid over $600,000.00. As employees of SARCO, Defendants Felipe Flores, Francisco G. Larrea French, Ivelisse Borrero Cordovés and Arturo Fernández were paid a salary.

165.    Defendants Felipe Flores's, Francisco G. Larrea French's, Ivelisse Borrero Cordovés's and Arturo Fernández's malicious actions and omissions constitute securities fraud Under Section 10(b) of the 1934 Securities Exchange Act, 15 U.S.C.A. §78j(b) and or SEC Rule 10(b)-5, 17 C.F.R. §240.10b-5.

166.    Defendants Aniceto Solares and Luis Arenas fraudulently and maliciously claim to be minority shareholders of the Companies and support Larrea French and Larrea Olozaga's pretensions that they paid for their participation since they have knowledge and expertise of over thirty years in the restaurant business and relations with Larrea French and Larrea Olozaga.

167.    Defendants Aniceto Solares's and Luis Arenas's malicious actions and omissions constitute securities fraud Under Section 10(b) of the 1934 Securities Exchange Act, 15 U.S.C.A. §78j(b) and or SEC Rule 10(b)-5, 17 C.F.R. §240.10b-5.

168.    Defendant María Larrea French, who is Defendant Larrea French's sister and Larrea Olozaga's daughter, and Defendant Alejandro Cerda fraudulently and maliciously represent and claim to be minority shareholders of the Companies and support Larrea French and Larrea Olozaga's false claims as having paid in part or totally for their shares.

169.    Defendant María Larrea French's and Defendant Alejandro Cerda's malicious actions and omissions constitute securities fraud Under Section 10(b) of the 1934 Securities Exchange Act, 15 U.S.C.A. §78j(b) and or SEC Rule 10(b)-5, 17 C.F.R. §240.10b-5.

### VI.
### SECOND CLAIM FOR RELIEF
**Declaratory Judgment under the Declaratory Judgment Act, 28 U.S.C. §§2201-2202 and Rule 57 of the Federal Rules of Civil Procedure and Rule 59 of the Puerto Rico Rules of Civil Procedure 32 L.P.R.A. Ap. V R.59.**

170.    Plaintiffs incorporate by reference all previous paragraphs of the Verified Complaint.

171.    Plaintiffs seek declaratory relief which may be granted under the Declaratory Judgment Act, 28 U.S.C. §§2201-2202 and Rule 57 of the Federal Rules of Civil Procedure.

172.    Plaintiffs request the Court to issue a declaratory judgment finding that Gómez and Cook own 25% participation in the Companies.   Plaintiffs request that said judgment declare that the Companies do not have minority shareholders and that the alleged minority shareholders do not own any participation in the Companies. Plaintiffs also request that the Court declare and Order CGC and GOI to immediately pay $424,000.00 of the declared but undistributed dividend to Cook and Gómez.

**VII**
**THIRD CLAIM FOR RELIEF**
**Derivative Action: Defendants Larrea Olozaga and Larrea French's Breach of Fiduciary Duties and Duty of Loyalty to CGC and GOI in violation of Articles 4.03 and 4.04 of the Puerto Rico General Corporations Law 14 L.P.R.A. §§3563,3564.**

173.   Plaintiffs incorporate by reference all previous paragraphs of the Verified Complaint.

174.   Larrea French's and Larrea Olozaga's acts constitute a clear violation of the "business judgment rule" and their fiduciary duty of loyalty towards CGC and GOI. Defendants Larrea Olozaga and Larrea French breached their fiduciary duties of loyalty and have acted ultra vires in an intentional and willful manner.

175.   Defendants Larrea Olozaga and Larrea French breached their fiduciary duties of loyalty and have acted ultra vires in an intentional and willful manner by misrepresenting that the Boards of Directors of CGC and GOI approved the issuance of 16% minority shares.

176.   Defendants Larrea Olozaga and Larrea French breached their fiduciary duties of loyalty and have acted ultra vires in an intentional and willful manner by misrepresenting that the Board of Directors of CGC and GOI approved and authorized Larrea French to extend an offer for the purchase of minority shares to eleven individuals.

177.   Defendants Larrea Olozaga and Larrea French breached their fiduciary duties of loyalty and have acted ultra vires in an intentional and willful manner by manipulating, inciting, provoking and encouraging eleven individuals to fraudulently bring claims against the corporations and fraudulently claim that they are shareholders of CGC and GOI.

178.   CGC and GOI are entitled to damages for the aforementioned acts by Larrea French and Larrea Olozaga in an amount of no less than $150,000.00.

## VIII.
## FOURTH CLAIM FOR RELIEF
### Direct Action: Defendants Larrea Olozaga and Larrea French's Breach of Fiduciary Duties and Duty of Loyalty to CGC and GOI Stockholders Cook and Gómez

179.   Plaintiffs incorporate by reference all previous paragraphs of the Verified Complaint.

180.   Larrea French and Larrea Olozaga, as shareholders of GOI, breached their fiduciary duty of loyalty and had a conflict of interest that prejudiced Plaintiffs Cook and Gómez as shareholders of GOI by misrepresenting that the Board of Directors of CGC and GOI approved and authorized Larrea French to extend an offer for the purchase of minority shares, by manipulating eleven individuals to fraudulently bring claims against the corporations, Cook and Gómez and fraudulently claim that they are shareholders of CGC and GOI and causing their $424,000.00 declared dividend to be wrongfully withheld.   Plaintiffs Cook and Gómez request that the Court order CGC and GOI the immediate payment of $424,000.00 which sum is equivalent to Cook and Gómez's withheld dividend.

## IX.
## FIFTH CLAIM FOR RELIEF
### Damages, Attorney's Fees and Expenses

181.   Plaintiffs incorporate by reference all previous paragraphs of the Verified Complaint.

182.   Defendants Larrea Olozaga and Larrea French breached their fiduciary duties and have acted ultra vires in an intentional and willful manner and CGC and GOI are entitled to recover any and all damages resulting from said breach that include all attorney's fees and expenses to be incurred to prosecute this case and which are estimated in an amount not less than $150,000.00.

183.   Defendants Larrea Olozaga and Larrea French breached their fiduciary duties and have acted ultra vires in an intentional and willful manner and shareholders Cook and Gómez are entitled to recover any and all damages resulting from said breach that include all attorney's fees and expenses to be incurred to prosecute this case and which are estimated in an amount not less than $150,000.00.

184.   Defendants must pay prejudgment interest on Cook and Gómez's withheld funds which total $424,000.00.

185.   Plaintiffs Cook and Gómez request a finding that the Co-defendants' (named in paragraphs 11-21) fraudulent and malicious actions and omissions constitute securities fraud Under Section 10(b) of the 1934 Securities Exchange Act, 15 U.S.C.A. §78j(b) and or SEC Rule 10(b)-5, 17 C.F.R. §240.10b-5 and are liable for all damages resulting from said violation that include all attorney's fees and expenses to be incurred to prosecute this case and which are estimated in an amount not less than $150,000.00.

**X.**
**RELIEF REQUESTED**

186.   Plaintiffs Cook and Gómez request a finding that Defendants Larrea French and Larrea Olozaga incurred and committed securities fraud Under Section 10(b) of the

1934 Securities Exchange Act, 15 U.S.C.A. §78j(b) and Or SEC Rule 10(b)-5, 17 C.F.R. §240.10b-5.

187.   Plaintiffs Cook and Gómez request a finding that Defendants Larrea French and Larrea Olozaga as Directors of CGC and GOI breached their fiduciary duty of loyalty, incurred in conflicts of interest and acted ultra vires and are liable for all damages resulting from said breach that include all attorney's fees and expenses to be incurred to prosecute this case and which are estimated in an amount not less than $150,000.00.

188.   Plaintiffs Cook and Gómez request a finding that Defendants Larrea French and Larrea Olozaga as shareholders of CGC and GOI breached their fiduciary duty of loyalty and had a conflict of interest that prejudiced Plaintiffs Cook and Gómez as shareholders and are liable for all damages resulting from said breach that include all attorney's fees and expenses to be incurred to prosecute this case and which are estimated in an amount not less than $150,000.00.

189.   Plaintiffs Cook and Gómez request that Defendants Larrea French and Larrea Olozaga be barred from acting as Directors on the Board of Directors of CGC and GOI.

190.   Plaintiffs request the Court to issue a declaratory judgment finding that Gómez and Cook each own 25% participation in the Companies and that said judgment declare that the Companies do not have minority shareholders and that the alleged minority shareholders do not own any participation in the Companies.

191.   Plaintiffs Cook and Gómez request a finding that the Co-defendants' (named in paragraphs 11-21) fraudulent and malicious actions and omissions constitute securities fraud Under Section 10(b) of the 1934 Securities Exchange Act, 15 U.S.C.A. §78j(b) and or SEC Rule 10(b)-5, 17 C.F.R. §240.10b-5 and are liable for all damages resulting

from said violation that include all attorney's fees and expenses to be incurred to prosecute this case and which are estimated in an amount not less than $150,000.00.

192.   Plaintiffs Cook and Gómez request that the Court order CGC and GOI the immediate payment of $424,000.00 which sum is equivalent to Cook and Gómez's withheld dividend.

193.   Larrea French and Larrea Olozaga must pay prejudgment interest on Cook and Gómez's withheld funds which total $424,000.00.

Respectfully submitted.

In San Juan, Puerto Rico, this 9th day of July 2014.

 /s/ Rubén T. Nigaglioni   .
Rubén T. Nigaglioni
USDC-PR 119901
rtn@nigaglionilaw

s/Monica Vega Quintana
Monica Vega Quintana
USDCPR No. 210911
E-mail:  monicavegalaw@aol.com

## VERIFICATION PURSUANT TO 28 U.S.C. §1746

We, John Matthew Cook, of legal age, single, resident of San Juan, Puerto Rico and President and Chief Executive Officer of Caribbean Glaze Corporation, and Ellysmar Gómez Luzardo, of legal age, single, resident of San Juan, Puerto Rico, and Executive Vice-President and Treasurer of Caribbean Glaze Corporation, hereby declare under penalty of perjury that the facts set forth in the foregoing Verified Complaint alleging Securities Fraud; Shareholder's Direct and Derivative Cause of Action for Breach of Fiduciary Duties and Ultra Vires Acts; Declaratory Judgment and Damages, are true and correct to the best of our knowledge, information and belief.

Executed in San Juan, Puerto Rico, on this 8th day of July 2014.

_____                    _____
John Matthew Cook                             Ellysmar Gómez Luzardo