IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| JOHN MATTHEW COOK, ELLYSMAR GÓMEZ LUZARDO, Plaintiffs, <br><br> v. <br><br> F. GERARDO LARREA OLOZAGA, et al, Defendants. <br><br><br> CARIBBEAN GLAZE CORPORATION, Interpleader Plaintiff, <br><br> v. <br><br> F. GERARDO LARREA OLOZAGA, JUAN A. LARREA FRENCH, JOHN MATTHEW COOK, ELLYSMAR GÓMEZ LUZARDO, GLAZE ON INVESTMENT, INC., LUIS ARENAS, ALEJANDRO D. CERDA, IVELISSE BORRERO DE CORDOVÉS, ARTURO FERNÁNDEZ, FELIPE FLORES ROLÓN, FRANCISCO GERARDO LARREA FRENCH, MARÍA LARREA FRENCH, GILBERTO MARXUACH, JACOBO ORTIZ MURIAS, ANICETO SOLARES RIVERO & FERNANDO L. TORO, Interpleaded-Defendants. | Civil No.:  2014-01544 (CCC) <br><br> RE:   SECURITIES   FRAUD; SHAREHOLDERS   DIRECT   and DERIVATIVE ACTION FOR BREACH OF FIDUCIARY DUTIES, CONFLICT OF INTEREST and ULTRA VIRES ACTS; DECLARATORY JUDGMENT; DAMAGES <br><br><br> RE: INTERPLEADER (Federal Interpleader Statute, 28 U.S.C. §1335) <br><br> DECLARATORY RELIEF (Declaratory Judgment Act, 28 U.S.C. §§2201-2202 and Rule 57) <br><br><br> INJUNCTION (28 U.S.C. § 2361) |

**AMENDED STATEMENT OF UNCONTESTED FACTS**

**TO THE HONORABLE COURT:**

   **NOW COME**, Plaintiffs John Matthew Cook and Ellysmar Gómez Luzardo, for

themselves as shareholders of Glaze On Investment, Inc. (hereinafter "GOI") and on

behalf of GOI and Caribbean Glaze Corporation (hereinafter "CGC") in the derivative

action, by and through the undersigned attorneys, and most respectfully submits the

following Statement of Uncontested Facts in Support of their Motion for Summary Judgment:

1.      In 2001, Plaintiffs Cook and Gómez attended a conference held in New York where they met a Krispy Kreme franchisee.  The Krispy Kreme franchisee recommended the brand and provided Plaintiffs Cook and Gómez contact information for the franchisor. Plaintiffs Cook and Gómez discussed with Co-Defendant Juan A. Larrea French the possibility of obtaining the Krispy Kreme franchise and together conceived the idea of exploring an opportunity to bring the franchise to Puerto Rico. **(Amended Verified Complaint Docket 5 ¶ 47 pages 15-16; Defendants Larrea French and Larrea Olozaga's Answer to Amended Verified Complaint ¶ 47 page 7 Docket 62).**

2.      Cook first contacted KKDC's top management on June 13, 2001 through an e-mail to Don Henshall, President of the International Division of KKDC, where Cook expressed his interest in discussing an Area Development Agreement for Puerto Rico. **(Amended Verified Complaint Docket 5 ¶ 48 page 16; Defendants Larrea French and Larrea Olozaga's Answer to Amended Verified Complaint Docket 62 ¶ 48 page 7).**

3.      Following further negotiations, Plaintiffs Cook and Gómez and Co-Defendant Larrea French presented their business plan to different high level executives at KKDC offices in Winston-Salem, North Carolina. **(Amended Verified Complaint Docket 5 ¶ 49 page 16; Defendants Larrea French and Larrea Olozaga's Answer to Amended Verified Complaint Docket 62 ¶ 49 page 7).**

4.      Cook and Gómez and Co-Defendant Larrea French spent considerable time, effort and money of their own to obtain the franchise. They prepared and gave presentations, and they traveled numerous times to North Carolina, Chicago, New York, Las Vegas, and the Bahamas, at their own cost, in pursuit of negotiating and obtaining the franchise. **(Amended Verified Complaint Docket 5 ¶ 50 page 16; Defendants Larrea French and Larrea Olozaga's Answer to Amended Verified Complaint Docket 62 ¶ 50 page 7).**

5.      Co-Defendant Larrea Olozaga, Co-Defendant Larrea French's father, contributed his business goodwill, which served as leverage to obtain the Krispy Kreme franchise. **(Amended Verified Complaint Docket 5 ¶ 54 page 17; Defendants Larrea French and Larrea Olozaga's Answer to Amended Verified Complaint Docket 62 ¶ 54 page 8).**

6.      Plaintiffs Cook and Gómez and Defendants Larrea French and Larrea Olozaga, together with Krispy Kreme Doughnut Corporation, decided to organize a for-profit corporation as the business structure for the development of the Krispy Kreme franchise in Puerto Rico. The corporation would be named "Caribbean Glaze Corporation".  On June 20, 2003, an application for a Certificate of Incorporation for Caribbean Glaze Corporation was filed with the Division of Corporations of the Puerto Rico Department of State by the legal firm McConnell Valdés. **(Exhibit 1, CGC Certificate of Incorporation).**

7.      Co-Defendant Gilberto Marxuach, who is an attorney, was CGC's incorporator. **(Amended Verified Complaint Docket 5 ¶ 55 page 17; Defendants Larrea French**

**and Larrea Olozaga's Answer to Amended Verified Complaint Docket 62 ¶ 55 page 8; Exhibit 1, CGC Certificate of Incorporation).**

8.      Co-Defendant's Gilberto Marxuach's mailing address as incorporator was at PO Box 364225, San Juan, Puerto Rico and physical address at 270 Muñoz Rivera Avenue, San Juan, Puerto Rico, 00918. **(Exhibit 1, CGC Certificate of Incorporation).**

9.      The number and class of authorized capital stock that CGC is authorized to issue is 1,000,000 shares of common stock at $1.00 par value.  **(Amended Verified Complaint Docket 5 ¶ 56 page 17; Defendants Larrea French and Larrea Olozaga's Answer to Amended Verified Complaint Docket 62 ¶ 56 page 8; Exhibit 1, CGC Certificate of Incorporation).**

10.      On July 31, 2003, Krispy Kreme Doughnut Corporation ("KKDC") extended a Letter of Intent for the development of Krispy Kreme in Puerto Rico. KKDC's intention was that the franchise would be assigned to CGC**. (Amended Verified Complaint Docket 5 ¶ 57 pages 17-18; Defendants Larrea French and Larrea Olozaga's Answer to Amended Verified Complaint Docket 62 ¶ 57 page 8).**

11.      Krispy Kreme International Ltd. would own 30% of CGC.  **(Amended Verified Complaint Docket 5 ¶ 57 pages 17-18; Defendants Larrea French and Larrea Olozaga's Answer to Amended Verified Complaint Docket 62 ¶ 57 page 8).**

12.      Cook and Gómez and Co-Defendant Larrea French decided that a for-profit corporation to be named "Glaze On Investment, Inc." would own the other 70% of CGC. On May 14, 2004, an application for a Certificate of Incorporation for Glaze On

Investment, Inc. was filed with the Division of Corporations of the Puerto Rico Department of State.  Brunilda Maldonado Rodríguez, Rosa Colón Vázquez and Gladys Olivencia Sosa were the incorporators.  **(Amended Verified Complaint Docket 5 ¶ 62 pages 18-19; Defendants Larrea French and Larrea Olozaga's Answer to Amended Verified Complaint Docket 62 ¶ 62 pages 8-9; Exhibit 2, GOI Certificate of Incorporation).**

13.     The incorporators' mailing address was at Colgate Palmolive Building, Suite 308, Metro Office Park, Guaynabo, Puerto Rico, 00968-1705. **(Exhibit 2, GOI Certificate of Incorporation).**

14.     The number and class of authorized capital stock that GOI was authorized to issue was 50,000 shares of common stock at $100.00 par value. **(Exhibit 2, GOI Certificate of Incorporation).**

15.     On July 22, 2004, the Krispy Kreme Doughnuts Development and Franchise Agreement for Puerto Rico was executed pursuant to a joint venture between KKDC and GOI.  KKDC would own 30% and GOI 70% equity interest in CGC.  CGC would own the Krispy Kreme franchise in Puerto Rico.  **(Amended Verified Complaint Docket 5 ¶ 63 page 19; Defendants Larrea French and Larrea Olozaga's Answer to Amended Verified Complaint Docket 62 ¶ 63 page 9).**

16.     Pursuant to the KK Development and Franchise Agreement, Plaintiff Cook was appointed Managing Director and General Manager of CGC. **(Amended Verified Complaint Docket 5 ¶ 64 page 19; Defendants Larrea French and Larrea Olozaga's Answer to Amended Verified Complaint Docket 62 ¶ 64 page 9).**

17.    Pursuant to the Joint Action of Board of Directors of Caribbean Glaze Corporation by Unanimous Written Consent it was resolved that, for purposes of Article 4.02 of the General Corporation Law of Puerto Rico, the Managing Director shall be considered to be the President of the Corporation.  **(Exhibit 3, Joint Action of Board of Directors of Caribbean Glaze Corporation by Unanimous Written Consent).**

18.    On July 22, 2004 a Shareholders' Agreement was executed by and among KKDC, GOI and CGC. Pursuant to the Shareholders' Agreement, Cook, Gómez and Larrea French were appointed to CGC's Board of Directors in representation of GOI while Jimmy Strickland and John Tate were appointed as CGC Directors representing KKDC. Defendant Larrea French was appointed Chairman of the Board of Directors. **(Amended Verified Complaint Docket 5 ¶ 66 page 19; Defendants Larrea French and Larrea Olozaga's Answer to Amended Verified Complaint Docket 62 ¶ 66 page 9).**

19.    On September 9, 2004, GOI's incorporators appointed Juan A. Larrea, John Cook and Ellysmar Gómez as Directors of the Board of Directors of GOI. Co-Defendant Gilberto Marxuach, Esq., was named Secretary.  **(Exhibit 4, GOI Action of Incorporators).**

20.    On October 7, 2004, a Certificate of Amendment of the Certificate of Incorporation of GOI was filed in the Department of State to increase the authorized shares of common stock to 1,000,000 at $1.00 par value.  **(Exhibit 5, GOI Amendment Certification of State Department).**

21.    On October 7, 2004, CGC's Board of Directors approved a resolution to issue 150,000 shares to KKDC in exchange for $150,000.00 cash contribution and 350,000

shares at a cash purchase value of $350,000.00 to GOI. The subscription agreements were duly executed and the corresponding stock certificates were issued on even date therewith. **(Amended Verified Complaint Docket 5 ¶ 67 page 19; Defendants Larrea French and Larrea Olozaga's Answer to Amended Verified Complaint Docket 62 ¶ 67 page 9).**

22.    To fund GOI's purchase of the CGC shares, Plaintiffs Cook and Gómez and Co-Defendants Larrea French and Larrea Olozaga each capitalized GOI with $87,500.00 for a total investment of $350,000.00. **(Amended Verified Complaint Docket 5 ¶ 68 page 20; Defendants Larrea French and Larrea Olozaga's Answer to Amended Verified Complaint Docket 62 ¶ 68 page 9).**

23.    On October 7, 2004, GOI recorded in its Stock Book the issuance of the 350,000 shares to Cook and Gómez and Co-Defendants Larrea French and Larrea Olozaga, each with 87,500 shares. **(Exhibit 6, GOI Stock Book pages 1-4).**

24.    The CGC Shareholders' Agreement was subsequently amended to reflect changes or substitutions of the KKDC representatives in the CGC Board of Directors. **(Amended Verified Complaint Docket 5 ¶ 72 page 20; Defendants Larrea French and Larrea Olozaga's Answer to Amended Verified Complaint Docket 62 ¶ 72 page 9).**

25.    On September 30, 2004 and October 7, 2004, CGC's attorneys, McConnell Valdés, made the following representation to KKDC on CGC's behalf:

> "There are no outstanding or authorized options, warrants, rights, contracts, calls, puts, rights to subscribe or other agreement or commitments to which the

Company is a party or which are binding upon the Company (other than the Agreement) providing for the issuance or redemption of any of its capital stock."

**(Amended Verified Complaint Docket 5 ¶ 73 page 20; Defendants Larrea French; Larrea Olozaga's Answer to Amended Verified Complaint Docket 62 ¶ 72 page 9; Exhibit 7, Letters from McConnell Valdés dated September 30, 2004 and October 7, 2004).**

26.    In 2006, the KKDC and CGC joint venture was terminated. CGC would continue to own the Krispy Kreme franchise in Puerto Rico and GOI survived with 100% of the shares.

**(Amended Verified Complaint Docket 5 ¶ 74 page 21; Defendants Larrea French and Larrea Olozaga's Answer to Amended Verified Complaint Docket 62 ¶ 74 page 10).**

27.    CGC's Board of Directors approved a resolution that enabled the execution of a stock redemption agreement and the corresponding resignation of KKDC representatives to CGC's Board of Directors, subject to the transfer of $150,000.00 from CGC to KKDC.

**(Amended Verified Complaint Docket 5 ¶ 75 page 21; Defendants Larrea French and Larrea Olozaga's Answer to Amended Verified Complaint Docket 62 ¶ 75 page 10).**

28.    To fund CGC's purchase of KKDC's shares, Cook and Gómez lent CGC $45,000.00 each and Defendant Larrea French lent CGC $90,000 to cover his and his father's, Co-Defendant Larrea Olozaga's, contribution. **(Exhibit 8, Plaintiff Cook Verification Statement ¶ 1; Exhibit 9, Plaintiff Gómez Verification Statement ¶ 1).**

29.     The redemption agreement and the termination of the CGC Shareholder's Agreement was effective on July 2006.  **(Amended Verified Complaint Docket 5 ¶ 77 page 21; Defendants Larrea French and Larrea Olozaga's Answer to Amended Verified Complaint Docket 62 ¶ 77 page 10).**

30.     Upon confirmation of receipt by KKDC of the $150,000 wire transfer proceeds, Louis B. Tischler, Jr., CGC's franchise attorney in Chicago, forwarded several documents related to the dissolution of the joint venture including the Stock Certificate endorsed for transfer and the resignation of KKDC representative Directors in CGC's Board. **(Amended Verified Complaint Docket 5 ¶ 78 page 21; Defendants Larrea French and Larrea Olozaga's Answer to Amended Verified Complaint Docket 62 ¶ 78 page 10).**

31.     Tishler advised CGC that it would be necessary for CGC to immediately prepare and have executed appropriate corporate actions reducing the number of directors from five to three in number.  **(Amended Verified Complaint Docket 5 ¶ 78 page 21, Exhibit 10, Letter from Louis Tishler dated September 7, 2006).**

32.     On August 4, 2006, CGC entered into a Credit Agreement with FirstBank Puerto Rico for a non-revolving loan credit facility of up to $5 million.  **(Amended Verified Complaint Docket 5 ¶ 80 page 22; Defendants Larrea French and Larrea Olozaga's Answer to Amended Verified Complaint Docket 62 ¶ 80 page 10).**

33.     The loan was obtained for the purposes of (i) financing capital expenditures to be incurred by CGC in the design, development, construction and equipping of a commissary

and three or more Krispy Kreme Stores, and (ii) to finance working capital needs and to satisfy fees, costs and expenses incurred in connection with the financing facilities contemplated in the Credit Agreement.  **(Exhibit 11, Credit Agreement, page 1, paragraph 4).**

34.    Defendants Larrea Olozaga and Larrea French admit the authenticity of the Credit Agreement.  **(Amended Verified Complaint Docket 5 ¶ 85 page 22 and Defendants Larrea French and Larrea Olozaga's Answer to Amended Verified Complaint Docket 62 ¶ 85 page 10).**

35.    In order to obtain the financing, CGC executed various Security Agreements in favor of FirstBank Puerto Rico granting a security interest upon all personal property pertaining to CGC stores in Caguas, Guaynabo and Dorado.  **(Amended Verified Complaint Docket 5 ¶ 81 page 22; Defendants Larrea French and Larrea Olozaga's Answer to Amended Verified Complaint Docket 62 ¶ 81 page 10).**

36.    CGC also executed Leasehold Mortgages in favor of FirstBank Puerto Rico. **(Amended Verified Complaint Docket 5 ¶ 82 page 22; Defendants Larrea French and Larrea Olozaga's Answer to Amended Verified Complaint Docket 62 ¶ 82 page 10).**

37.    The Board of Directors issued a Corporate Resolution authorizing Juan A. Larrea to negotiate and execute the Credit Agreement and all documents required therein as Chairman of the Board of CGC.  **(Amended Verified Complaint Docket 5 ¶ 83 page 22; Defendants Larrea French and Larrea Olozaga's Answer to Amended Verified**

**Complaint Docket 62 ¶ 83 page 10; Exhibit 12, CGC Corporate Resolution authorizing Larrea French to execute Credit Agreement).**

38.    In the Credit Agreement, Larrea French represented that CGC only had one Shareholder, GOI, and that CGC would not, without the previous written consent of Lender, change the voting rights of any class of stock or issue or contract to issue any additional shares of stock.  **(Exhibit 11, Credit Agreement ¶ 7.11).**

39.    CGC has never notified or requested previous written consent of Lender to change the voting rights of any class of stock or to issue or to contract to issue any additional shares of stock.  **(Amended Verified Complaint ¶ 86 page 23; Defendants Larrea French and Larrea Olozaga Answer to Verified Complaint Docket 62 ¶ 86 page 11).**

40.    CGC opened its first Krispy Kreme store on May 6, 2008 and went on to open six more stores in Ponce, Mayaguez, Guaynabo, Dorado, Hatillo and the most recent one, located in Carolina, opened on May 17,  2013.  **(Exhibit 8, Plaintiff Cook Verification Statement ¶ 2; Exhibit 9, Plaintiff Gómez Verification Statement ¶ 2).**

41.    CGC has approved contractual corporate action such as stock redemptions, appointment of the corporations´ external auditors, appointment of officers, land lease agreements, land purchase agreements, credit agreements and payment of dividends, etc., through appropriately executed Corporate Resolutions or Unanimous Written Consents.  When the Directors have not been able to meet, they have approved corporate actions through duly executed unanimous written consent. **(Exhibit 13, Various Corporate Resolutions).**

42.    CGC has been recognized as an outstanding franchisee by Krispy Kreme Doughnut Corporation. CGC has won numerous awards for its outstanding operations, marketing, product development and hospitality. CGC has been designated by KKDC as the official Training Center for Latin America and has successfully trained numerous managers from the Dominican Republic, Mexico and Colombia. Recognizing CGC's operational excellence, KKDC recently recruited CGC's Marketing Manager to be in charge of Marketing for all of Latin America**.   (Amended Verified Complaint Docket 5 ¶ 144 pages 38-39; Defendants Larrea French and Larrea Olozaga's Answer to Amended Verified Complaint Docket 62 ¶ 144 page 15).**

43.    From the time in which the Corporations were established, majority shareholder Co-Defendant Larrea French had shown interest and the desire of granting a minority participation to several persons that could be useful to the Corporations and contribute to its success, whether because of their knowledge or professional background or because of their relationship with Grupo Larrea. **(Exhibit 14, Individual Defendants´ Declaratory Judgment Complaint filed on June 10, 2014 in the Puerto Rico Court of First Instance, Bayamón Part, ¶ 22 page 4; Exhibit 15, Defendants Larrea French and Larrea Olozaga's Answer to Individual Defendants´ Declaratory Judgment Complaint filed on July 18, 2014 in the Puerto Rico Court of First Instance, Bayamón Court, Civil Case D AC-2014-1549 ¶ 22 page 3).**

44.    In 2002, Co-Defendant Larrea French identified potential minority investors and prepared various lists which he discussed and consulted with Cook and Gómez. **(Exhibit**

**8, Plaintiff Cook Verification Statement ¶ 3, Exhibit 9, Plaintiff Gómez Verification Statement ¶ 3)**

45.    On November 12, 2002, Gómez reviewed a list of potential preliminary shareholders and investors and noted that it contained names like Alberto Rodríguez and Jacobo [Ortiz Murias] that had not been considered in the list worked on months before. (**Exhibit 16, E-mail communication from Gómez to Cook and Larrea French dated November 12, 2002)**

46.    On October 28, 2003, Co-Defendant Larrea French sent to Cook and Gómez another preliminary shareholders and potential investors list for Caribbean Glaze Corporation and requested their opinion. The new list of the preliminary shareholders and investors for CGC proposed by Co-Defendant Larrea French to Cook and Gómez added Gilberto Marxuach, Jacobo Ortiz, Fernando Toro and Gabriel Salvat. The proposed minority shareholders would have 6% participation and would be required to make equity contributions.  **(Exhibit 17, E-mail communication from Larrea French to Cook and Gómez dated October 28, 2003)**

47.    On November 15, 2003, Co-Defendant Larrea French sent to Cook and Gómez the biographies of the equity partners of CGC that would be presented to KKDC in an upcoming presentation. These only included Cook, Gómez and Co-Defendant Larrea French as the equity partners in the Krispy Kreme Doughnuts venture in Puerto Rico. KKDC was also informed that Cook would be the operating partner. **(Exhibit 18, E-mail communication from Larrea French to Cook and Gómez dated November 15, 2003).**

48.     Cook and Gómez and Co-Defendant Larrea French agreed that once they decided on a final list of potential invitees to be investors as minority shareholders of the company they would prepare and send a letter to each one indicating the applicable percentage of participation and the equity investment required as well as other terms and conditions. Co-Defendant Larrea French assumed the responsibility of drafting the letter. **(Exhibit 8, Plaintiff Cook Verification Statement ¶ 4; Exhibit 9, Plaintiff Verification Gómez Statement ¶ 4).**

49.     On September 7, 2004, Gómez suggested to Co-Defendant Larrea French "disclaimer language" to be included in the letter to be drafted by Larrea French for the potential investors.  **(Exhibit 19, E-mail communication from Ellysmar Gómez to Larrea French and John Cook dated September 7, 2004).**

50.     On November 22, 2004, Co-Defendant Larrea French requested GOI's attorneys to prepare a shareholders' agreement and stated that he would send the shareholders' list on November 30, 2004. Co-Defendant Larrea French copied Cook and Gómez. **(Exhibit  20, E-mail communication from Larrea French to Sammy Cespedes, Esq. dated November 22, 2004).**

51.     On November 30, 2004, Cook inquired as to the status of the shareholder's agreement and asked Co-Defendant Larrea French about the final list of shareholders that would be provided to the attorneys and the letter to the invitees.  **(Exhibit 21, E-mail communication from Cook to Larrea French dated November 30, 2004).**

52.     Co-Defendant Larrea French did not send to Cook and Gómez or the attorneys a list of GOI proposed minority shareholders on November 30, 2004 as he stated that he would do.  **(Exhibit 8, Plaintiff Cook Verification Statement ¶ 5; Exhibit 9, Plaintiff Verification Gómez Statement ¶ 5).**

53.     Co-Defendant Larrea French did not commit to a final list of proposed GOI minority shareholders or invitees or integrating other people who could be useful to the Corporations and contribute to its success, as discussed in 2002.  **(Exhibit 8, Plaintiff Cook Verification Statement ¶ 6; Exhibit 9, Plaintiff Verification Gómez Statement ¶ 6).**

54.     To fund GOI's purchase of the CGC shares, only Cook and Gómez and Co-Defendants Larrea French and Larrea Olozaga each capitalized GOI with $87,500.00 for a total investment of $350,000.00.  **(Amended Verified Complaint Docket 5 ¶ 68 page 20; Defendants Larrea French and Larrea Olozaga's Answer to Amended Verified Complaint Docket 62 ¶ 68 page 9).**

55.     In Exhibit C to the KK Development and Franchise Agreement, Co-Defendant Larrea French certified that the only CGC Shareholders were GOI, Cook, Gómez, Larrea French and Larrea Olozaga.  **(Exhibit 22, Exhibit C to the KK Development and Franchise Agreement).**

56.     CGC has never made revisions to Exhibit C to reflect a change of owners.  **(Exhibit 8, Plaintiff Cook Verification Statement ¶ 7; Exhibit 9, Plaintiff Verification Gómez Statement ¶ 7).**

57.     Likewise, in Exhibit I, paragraph 10, to the KK Development and Franchise Agreement, Co-Defendant Larrea French represented and warranted that all of its Owners and their interests in the Company were completely listed in Exhibit C to the Agreement and that the Company shall make, sign, and deliver to KKDC and HDN Development Corporation ("HDNDC") such revisions thereto as may be necessary during the term of the Agreement to reflect any changes in the information contained thereinpm. **(Exhibit 23, Exhibit I to the KK Development and Franchise Agreement).**

58.     Co-Defendants Larrea Olozaga and Larrea French admit to the authenticity of the Exhibit I to the KK Development and Franchise Agreement.   **(Amended Verified Complaint Docket 5 ¶ 71 page 20; Defendants Larrea French and Larrea Olozaga's Answer to Amended Verified Complaint Docket 62 ¶ 71 page 9).**

59.     Since CGC's inception, Cook and Gómez and Co-Defendant Larrea French spent considerable time, effort and money of their own to obtain the franchise (See SUF 4) and did all the work.  **(Exhibit 24, E-mail communication from Larrea French to Cook and Gómez dated April 24, 2008 at 2:37p.m.).**

60.     Between July 19, 2006 and April 23, 2008, Cook, Gómez, Larrea French and Larrea Olozaga did not revisit or discuss the idea of incorporating minority shareholders or the issuance of any shares to additional shareholders.   **(Exhibit 24, E-mail communication from Larrea French to Cook and Gómez dated April 24, 2008 at 2:37 p.m.).**

61.    CGC was scheduled to open its first Krispy Kreme store in Puerto Rico on May 6, 2008 and its success was evident.  Plaintiff Gómez took a deserved, albeit brief, vacation to Bali, Indonesia, to recharge energies and prepare for the work that was to come after the opening. Cook went to the mainland U.S. to attend to some matters. **(Exhibit 8, Plaintiff Cook Verification Statement ¶ 8; Exhibit 9, Plaintiff Verification Gómez Statement ¶ 8).**

62.    On April 23, 2008, Co-Defendant Larrea sent to Cook and Gómez an e-mail with a list of proposed minority investors in which he unilaterally added names, unilaterally raised to 20% the minority participation to be sold and stated that the identity of minority investors and the percentage of participation offered would be subject to his father's, Co-Defendant Gerardo Larrea Olozaga's, final wishes.  **(Exhibit 25, E-mail communication from Larrea French to Cook and Gómez dated April 23, 2008 at 8:47 p.m.).**

63.    Co-Defendant Larrea French did not just pretend to revive an abandoned issue, he also deviated from the original intent under which they had considered to offer participation to potential investors in 2002 (people who could be useful to CGC and GOI and contribute to its success) to people who were related to him, like his sisters Anita and Maria Larrea French and his brother Gerardo Larrea French, and business partners and employees who contributed to a corporation named South American Restaurants Corp. ("SARCO") that belongs to him and his father.  **(Exhibit 8, Plaintiff Cook Verification Statement ¶ 9; Exhibit 9, Plaintiff Verification Gómez Statement ¶ 9).**

64.    Although the time difference between Bali, Indonesia and Puerto Rico affected the communication, Plaintiff Gómez was quick to respond and objected to Co-Defendant

Larrea French's proposed list.  Cook also objected to Larrea French's latest list.  **(Exhibit 26, E-mail communication from Gómez to Larrea French and Cook dated April 24, 2008 at 2:10 p.m.; Exhibit 8, Plaintiff Cook Verification Statement ¶ 10).**

65.    Regardless, Co-Defendant Larrea French went on to inquire as to the interest and financial capacity of several of his new proposed potential investors and notified Cook and Gómez, through e-mail, that some of the people that he had included in his April 23, 2008 list were not interested in investing in the project, such as his sister Anita Larrea and a SARCO employee named William, whereas his brother Gerardo and Felipe Flores were only interested to invest 1%.  Co-Defendant Larrea French had not yet spoken to some of the people who he included in the April 23, 2008 list such as Ivelisse Cordovés and Alex Cerda and stated that he would wait until he first spoke to Cook and Gómez about including them. Co-Defendant Larrea French stated that he did not know if Co-Defendant Ivelisse Cordovés would invest or if Co-Defendant Alex Cerda could invest. Codefendant Larrea French acknowledged Gómez's objection to his new proposed list and the fact that Co-Defendant Larrea Olozaga had not given his comments regarding the proposed list.  **(Exhibit 27, E-mail communication from Gómez to Larrea French and Cook dated April 24, 2008 at 9:01 p.m.).**

66.    On April 24, 2008 at 2:10 p.m., Gómez answered Co-Defendant Larrea French's April 23, 2008 e-mail from Indonesia via e-mail stating that she believed that it had been thoroughly discussed between Cook and Gómez and Co-Defendant Larrea French that the percentage that they had once considered could be sold to minority investors was 10% or less and questioned the inclusion of certain individuals in the new list.  **(Exhibit**

**26, E-mail communication from Gómez to Larrea French and Cook dated April 24, 2008 at 2:10 p.m.).**

67.    On April 24, 2008, at 2:37 p.m. Co-Defendant Larrea French replied to Gómez's e-mail communication stating that memory did not fail Gómez.  Larrea French admitted that they had discussed issuing 10% to minority shareholders and recognized that Cook and Gómez and Co-Defendant Larrea French had done all the work. Co-Defendant Larrea French asked Gómez to call him the next day.  Cook was arriving the next day to Puerto Rico.  **(Exhibit 24, E-mail communication from Larrea French to Cook and Gómez dated April 24, 2008 at 2:37 p.m.).**

68.    On April 24, 2008 at 9:01 p.m., Co-Defendant Larrea French sent to Cook and Gómez <u>another</u> list of proposed shareholders with different participation percentages and equity contributions and asked that Gómez let him know when they could speak the following day. **(Exhibit 27, E-mail communication from Gómez to Larrea French and Cook dated April 24, 2008 at 9:01 p.m.).**

69.    On April 24, 2008 at 9:01 p.m., Co-Defendant Larrea French acknowledged Plaintiff Gómez's preference not to issue minority shares and to keep her 25% participation in CGC.  **(Exhibit 27, E-mail communication from Gómez to Larrea French and Cook dated April 24, 2008 at 9:01 p.m.).**

70.    Co-Defendant Larrea French inquired as to the interest and financial capacity of two of his new proposed potential investors in Cook's presence, but no offer to sell or

acceptance to buy was ever made.  **(Exhibit 8, Plaintiff Cook Verification Statement ¶ 11)**

71.    On April 28, 2009 at 9:25 p.m., Co-Defendant Larrea French sent to Cook and Gómez <u>yet another</u> list of potential minority investors. **(Exhibit 28, E-mail communication from Larrea French to Cook and Gómez dated April 28, 2008 at 9:25 p.m.).**

72.    On April 29, 2008 at 12:48 p.m., Co-Defendant Larrea French sent to Cook and Gómez a list claiming that they were "all confirmed" and asked Cook and Gómez to call him with respect to the equity contribution.  **(Exhibit 29, E-mail communication from Larrea French to Cook and Gómez dated April 29, 2008 at 12:48 p.m.).**

73.    On May 2, 2008 at 1:41 p.m., Co-Defendant Larrea French sent Cook and Gómez and Co-Defendant Larrea Olozaga an e-mail communication which he titled subject "Lista Final Accionistas".  The last and final list proposed by Co-Defendant Larrea French in 2008 is dated May 2, 2008 at 1:41 p.m., and it assigned 42% majority shareholder participation to Cook and Gómez and 41% participation to Co-Defendant Larrea French and Co-Defendant Larrea Olozaga. The remaining 17% participation was assigned to the individual Co-Defendants.  **(Exhibit 30, E-mail communication from Larrea French to Cook and Gómez dated May 2, 2008 at 1:41 p.m.).**

74.    The May 2, 2008 1:41 p.m. list is the <u>last</u> list that Co-Defendant Larrea French sent to Cook and Gómez in connection with his interest in selling minority shares. The list does not provide what type of shares would be issued or the shares' rights, preferences,

limitations and restrictions. **(Exhibit 30, E-mail communication from Larrea French to Cook and Gómez dated May 2, 2008 at 1:41 p.m.; Exhibit 8, Plaintiff Cook Verification Statement ¶ 12; Exhibit 9, Plaintiff Verification Gómez Statement ¶ 10).**

75.    Cook and Gómez represented two thirds majority of CGC and GOI's Board of Directors and 50% shareholder's vote and they did not approve Larrea French's April 24 or May 2, 2008, or any other, proposed list of shareholders or the issuance of any shares to additional shareholders. **(Amended Verified Complaint Docket 5 ¶ 120 page 32).**

76.    CGC's and GOI's Board of Directors, composed of Cook, Gómez and Larrea French never issued a Corporate Resolution or a Unanimous Written Consent approving or certifying a vote or decision for the issuance of any shares to additional shareholders or to authorize Larrea French to extend an offer to anyone.   **(Amended Verified Complaint Docket 5 ¶ 121 page 32).**

77.    CGC's and GOI's Board of Directors, composed of Cook, Gómez and Larrea French never approved a letter to be sent to the invitees or proposed minority shareholders extending an offer to sell the shares.  **Exhibit 8, Plaintiff Cook Verification Statement ¶ 13; Exhibit 9, Plaintiff Verification Gómez Statement ¶ 11).**

78.    After Gómez returned from her vacation in Indonesia and Cook's trip to the mainland U.S., Co-Defendant Larrea French did not convene CGC and or GOI Board of Directors nor did he present a Unanimous Written Consent for approval of a vote or decision for the issuance of additional shares or to extend an offer to additional

shareholders.   **Exhibit 8, Plaintiff Cook Verification Statement ¶ 14; Exhibit 9, Plaintiff Verification Gómez Statement ¶ 12).**

79.    On December 8, 2008, Co-Defendant Larrea French met with Cook and Gómez and handed them several documents that Larrea French had unilaterally asked Attorney Pablo Rodríguez to prepare. The documents included an Agreement and Plan of Merger of GOI with and into CGC, a Certificate of Ownership and Merger in which GOI was merged into CGC, an Amendment to CGC's Certificate of Incorporation (to provide for class a or class b nonvoting stocks as Defendant Larrea French was proposing), new By Laws for CGC that unilaterally increased the number of Directors from 3 to 5 and unilaterally included Co-Defendants Larrea Olozaga and Gilberto Marxuach as new directors, and unilaterally removed John Cook from his CEO/President position. They also provided that Directors would serve one year terms and that the power of CGC's officers would be established by the Board of Directors by way of a Resolution.   **(Amended Verified Complaint Docket 5 ¶ 123 page 33; Exhibit 31, Proposed Corporate Documents).**

80.    The documents also included a proposed Class A Voting Common Stock Shareholders Agreement (Cook, Gómez, Larrea French and Larrea Olozaga were the only designated class A stockholders), a proposed Class B Non-Voting Common Stock Shareholders Agreement in which the designation of class B non-voting common stock shareholders was left in blank, and did not include any names.  The Class A Shareholders' Agreement stipulated that Directors would serve initial terms of five years and that the President (proposed to be Co-Defendant Larrea French) would serve an initial five year

term that would be automatically renewed unless determined by a unanimous vote of the Board.  **(Amended Verified Complaint Docket 5 ¶ 123 page 33; Exhibit 31, Proposed Corporate Documents).**

81.    For the following twelve months, Co-Defendant Larrea French exchanged various versions of the documents with Cook and Gómez but were not able to agree on any final document.  **(Amended Verified Complaint Docket 5 ¶ 124 pages 33-34; Defendants Larrea French and Larrea Olozaga's Answer to Petition for Mandamus or Complaint and Counterclaim ¶ 56 page 26)**

82.    At no time did Co-Defendant Larrea French fill in the names of the persons who he and Co-Defendant Larrea Olozaga proposed would own class b non-voting shares. **(Amended Verified Complaint Docket 5 ¶ 124 page 34; Exhibit 32, Last Version of Class B Non-Voting Common Stock Shareholders Agreement).**

83.    On December 2009, negotiations were terminated without an agreement. **(Amended Verified Complaint Docket 5 ¶ 125 page 34; Exhibit 33, Answer to Petition for Mandamus or Complaint and Counterclaim filed in Civil Case K PE2013-5152 ¶ 56 page 26).**

84.    In numerous subsequent communications, Co-Defendants Larrea French and Larrea Olozaga stated and affirmed that they own 50% of CGC and GOI shares and that Cook and Gómez owned the other 50%.  **(Exhibit 34, Letter from Larrea French to Cook dated June 10, 2011; Exhibit 35, Letter dated June 23, 2011 from Larrea French to Gómez stating that he and his father owned 50% of the companies'**

**shares; Exhibit 36, Letter from Larrea French to Cook dated August 31, 2011; Exhibit 37, Letter from Larrea French to Gómez dated January 23, 2012; Exhibit 38, Minutes of Special Meeting of Shareholders on April 16, 2010).**

85.     Co-Defendants Larrea French and Larrea Olozaga's attorneys have also stated that Co-Defendants Larrea French and Larrea Olozaga own 50% of CGC and GOI. **(Exhibit 39, Letter from Ricardo Casellas, Esq., dated December 20, 2011).**

86.     On October 28, 2011, Cook presented motions to the Board of Directors of CGC for the declaration and distribution of dividends. Cook explained to the Board that fiscal year 2011 had been an excellent and very profitable year and that CGC had accumulated over $4 million in cash in the bank. Cook distributed to the Directors CGC's financial statements for fiscal year 2011 and advised that a distribution of dividends was required to liquidate excessive retained earnings in order to prevent a potential determination of a tax evasion and potential fine.  **(Amended Verified Complaint Docket 5 ¶ 134 page 36; Defendants Larrea French and Larrea Olozaga's Answer to Amended Verified Complaint Docket 62  ¶ 134 page 14).**

87.     Co-Defendants Larrea French and Larrea Olozaga conditioned any declaration and distribution of dividends to Cook and Gómez's acquiescence to the admittance of the individual Co-Defendants as minority shareholders. **(Amended Verified Complaint Docket 5 ¶ 136 page 36; Exhibit 40, Letter from Larrea French to the individual Co-Defendants dated February 13, 2013; Exhibit 41, CGC Unanimous Written Consent declaring Dividends; Exhibit 42, GOI Unanimous Written Consent declaring Dividends).**

88.    In a CGC and GOI shareholders' meeting held on June 1, 2012, Co-Defendants Larrea French and Larrea Olozaga presented to Cook and Gómez an offer to buy them out as shareholders of CGC and GOI.   Co-Defendant Larrea French admitted that the sale of shares to minorities was never done.   Co-Defendants Larrea French and Larrea Olozaga would, thus, purchase Cook and Gómez's shares and immediately sell shares to the proposed minorities valuing the shares at the original issuance value instead of their real value. According to a 2012 valuation of the company commissioned by Co-Defendant Larrea French, CGC's 16% shares were valued at $3,840,000.00.  **(Amended Verified Complaint Docket 5 ¶ 145 page 39; Exhibit 8, Plaintiff Cook Verification Statement ¶ 15; Exhibit 9, Plaintiff Verification Gómez Statement ¶ 13)**

89.    On June 27, 2012 Cook and Gómez refused Co-Defendants Larrea French and Larrea Olozaga's offer. **(Amended Verified Complaint Docket 5 ¶ 47 pages 15-20; Exhibit 43, E-mail communication from Gómez to Larrea French and Cook dated June 27, 2012).**

90.    On August 12, 2012, Cook again presented motions to the Board of Directors for the declaration and distribution of dividends to GOI's sole shareholders (Cook and Gómez and Co-Defendants Larrea French and Larrea Olozaga) and made reference to CGC's financial statements for fiscal year 2012 which showed a dramatic increase in net earnings. **(Exhibit 44, Letter from Cook to the Board of Directors of CGC dated August 20, 2012).**

91.    Regardless of the opinions and recommendations of CGC's President-CEO, its Treasurer, CGC's external tax legal counsel and independent tax auditors and advisors,

Co-Defendants Larrea Olozaga and Larrea French did not approve the distribution and declaration of $5.3 million in dividends as calculated by the company's auditors and recommended by management. **(Amended Verified Complaint Docket 5 ¶ 135 page 36; Defendants Larrea Olozaga and Larrea French's Answer to Amended Verified Complaint Docket 62 ¶ 135 page 14).**

92.     On November 14, 2012, Cook communicated to Co-Defendant Larrea French, in writing, that: "neither the shareholders nor the Board of Directors ever approved the issuance of any shares to any additional shareholders. Much less were any of the actions necessary to effect such issuance ever taken (i.e. no subscription agreements were entered into, no capital contributions were received, no stock certificates were issued). Therefore, neither CGC nor GOI has any obligation with respect to potential additional shareholders and this continues to be a dead issue. **(Exhibit 45, Letter from Cook to Larrea French of CGC dated November 14, 2012).**

93.     Co-Defendant Larrea French acted fraudulently and in breach of his fiduciary duty and sent the February 13, 2013 letter to the Individual Co-Defendants and he intentionally and fraudulently misrepresented to the individual Co-Defendants that in 2008 the "four" members of the Board of Directors of CGC and GOI had agreed on a final list of shareholders to whom shares would be sold, and that in 2009 the board members "processed" a minority shareholder agreement for them. In this letter Co-Defendant Larrea French also stated disagreement with the position assumed by Cook and Gómez and that he and his father, Co-Defendant Larrea Olozaga, would create an impasse within the Board of Directors with regards to the distribution of dividends to the only four existing

shareholders. **(Exhibit 40, Letter from Larrea French to the individual Co-Defendants dated February 13, 2013).**

94.     In a letter dated April 16, 2013, Gómez informed Co-Defendants Larrea French and Larrea Olozaga that:   "[p]articularly, with regard to your insistence on having the company issue shares with no voting rights to a group of your relatives, friends, and employees, we reiterate once again and for the last time that neither CGC nor GOI have any legal obligation in this regard."  **(Exhibit 46, Letter from Gómez to Larrea French dated April 16, 2013).**

95.     In  a  May  21,  2013 communication, Gómez told Co-Defendant Larrea French: "[y]ou  have  risen  as  the  illegitimate  representative  of  a  group  of individuals  who,  in  your   opinion, are entitled to become CGC minority shareholders. However, the truth is that there is no such right, and, therefore, the escrow is unjustified. The  company  has  no  evidence  justifying  the  allocation  of  funds  for  this  type  of contingencies.  The company has not been provided with any documentary evidence showing the character of the alleged minority shareholders. The corporation has always acted without recognizing said rights in any way.  Consequently, in order to prevail, each of the alleged minority shareholders would have to prove their individual case in court and obtain a final and enforceable judgment….**" (Exhibit 47, Letter from Gómez to Larrea French dated May 21, 2013).**

96.     Despite Cook and Gómez's stated opposition, on September 17, 2013, Co-Defendant Larrea French, again acted fraudulently, in breach of his fiduciary duty and in conflict of interest, and sent letters to the individual Co-Defendants. Co-Defendant Larrea

French signed the letters as Chairman of the Board of Directors of CGC.   **(Amended Verified Complaint Docket 5 ¶ 29 page 8; Defendants Larrea Olozaga and Larrea French's Answer to Amended Verified Complaint Docket 62 ¶ 29 page 5; Exhibit 40, Letter from Larrea French to the individual Co-Defendants dated February 13, 2013; Exhibit 48, Letter from Larrea French to the individual Co-Defendants dated September 17, 2013)**.

97.    On October 31, 2013, Cook and Gómez filed a Petition for Mandamus and Complaint in the Puerto Rico Court of First Instance, San Juan Part, Civil Case No. K PE2013-5152(904) against CGC Directors, Co-Defendants Larrea French and Larrea Olozaga, and derivatively included CGC and GOI. Cook and Gómez claimed that Co-Defendants Larrea French and Larrea Olozaga breached their fiduciary duty by refusing to liquidate excessive retained earnings and distribute a $5.3 million dividend regardless of the opinions and recommendations of CGC's President and CEO, its Treasurer, CGC's external tax legal counsel and independent tax auditors and advisors who warned that a distribution of dividends was required to liquidate excessive retained earnings in order to prevent a potential determination of tax evasion and fine. **(Exhibit 49, Petition for Mandamus and Complaint Civil Case No. K PE2013-5152).**

98.    On December 2, 2013,   Co-Defendants Larrea French and Larrea Olozaga filed a Motion to Dismiss alleging that a "ministerial" duty to declare dividends did not exist, hence, *mandamus* was not proper.  **(Exhibit 50, Motion to Dismiss Civil Case No. K PE2013-5152).**

99.     On even date, Co-Defendants Larrea French and Larrea Olozaga filed Answer to Petition for Mandamus or Complaint and Counterclaim and alleged, in essence, that their refusal to declare a dividend was based on Cook and Gómez denial of the existence of minority shareholders and alleged a variety of corporate mismanagement claims. **(Exhibit 33, Answer to Petition for Mandamus or Complaint and Counterclaim Civil Case No. K PE2013-5152).**

100.    Co-Defendants Larrea French and Larrea Olozaga also filed on December 2, 2013 a Motion to Submit Exhibits under Seal.  **(Exhibit 51, Motion to Submit Exhibits under Seal Civil Case No. K PE2013-5152).**

101.    On January 8, 2013, the San Juan Court held an evidentiary hearing on the Motion to Dismiss but did not allow the individual Co-Defendants' intervention. **(Exhibit 52, Minutes of the Hearing and Judgment on Petition for Mandamus; Civil Case No. K PE2013-5152).**

102.    Cook, as President of CGC and Gómez, as Treasurer of CGC, had the duty and obligation to sign and certify CGC's Income Tax Returns and knew that the liquidation of excessive retained earnings was necessary to avoid a potential determination of tax evasion and the imposition of a fine.  For this reason Plaintiffs Cook and Gómez conceded to placing in escrow 16% of the declared dividend.  **Exhibit 8, Plaintiff Cook Verification Statement ¶ 16; Exhibit 9, Plaintiff Verification Gómez Statement ¶ 14)**

103.    On May 24, 2014, the Board of Directors of CGC did not meet but the four Directors of CGC, Cook and Gómez and Co-Defendants Larrea French and Larrea Olozaga each

signed an Action of the Board of Directors of CGC By Unanimous Written Consent approving the declaration of a dividend to its sole shareholder, GOI, in the aggregate amount of $5.3 million.  **(Exhibit 41, CGC Unanimous Written Consent declaring Dividends).**

104.   Cook, Gómez, Larrea French and Larrea Olozaga also signed a Joint Action of the Board of Directors and Shareholders of GOI. By Unanimous Written Consent, consenting and approving the declaration of a dividend in the aggregate amount of $5.3 million.  **(Exhibit 41, CGC Unanimous Written Consent declaring Dividends; Exhibit 42, GOI Unanimous Written Consent declaring Dividends).**

105.   Co-Defendants Larrea French and Larrea Olozaga knowingly falsely and fraudulently admitted on page 4 ¶ 28 of their Answer to Declaratory Judgment in Co-Defendants Bayamón Court case, on July 18, 2014, that an **April 24, 2008 (9:01 p.m.)** list is the final "confirmed and accepted" shareholders' list to whom shares would be sold, the respective percentage participation and equity contribution. **(Exhibit 15, Defendants Larrea French and Larrea Olozaga's Answer to Individual Defendants´ Declaratory Judgment Complaint filed on July 18, 2014 in the Puerto Rico Court of First Instance, Bayamón Court, Civil Case D AC-2014-1549 ¶ 28 page 4).**

106.   In the San Juan Court, Civil Case K PE2013-5152, at page 24, ¶ 45 of their Answer to Petition for Mandamus or Complaint and Counterclaim, Co-Defendants Larrea French and Larrea Olozaga previously alleged that a **May 2, 2008** shareholders list was the final and approved list.  **(Exhibit 33, Answer to Petition for Mandamus or Complaint and Counterclaim filed in Civil Case K PE2013-51**

**52 ¶ 45 page 24).**

107.   The Bayamón Court dismissed the Declaratory Judgment Complaint on January 28, 2015, also based on procedural grounds. **(Exhibit 53, Judgment dismissing Declaratory Judgment Complaint, Puerto Rico Court of First Instance, Bayamón Part Civil Case No. DAC2014-1549).**

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, this 16th day of February, 2015.

**CERTIFICATE OF SERVICE:** I hereby certify that on this same date, I electronically filed the foregoing to the Clerk of the Court using the CM/ECF system and as such all parties of record have received notice of its filing.

/s/ Rubén T. Nigaglioni
Rubén T. Nigaglioni
USDC-PR 119901
rtn@nigaglionilaw

/s/ Mónica Vega Quintana
Monica Vega Quintana
USDCPR No. 210911
monicavegalaw@aol.com