Exhibit 32



Ellysmar Gomez <egomez@krispykremepr.com>

---

## Caribbean Glaze Corporation

---

**Pablo Rodríguez** <Pablo.Rodriguez@oneillborges.com>  Tue, Dec 15, 2009 at 11:45 AM
To: Ellysmar Gomez <egomez@sarcopr.com>, Tony Larrea <tonylarrea@sarcopr.com>, John Cook <jcook@sarcopr.com>, Gerardo Larrea <glarrea@sarcopr.com>

Señores:

Les adjunto las versiones revisadas de los By-Laws, Acuerdos de Accionistas Clase A y Clase B y del "Side Letter", las cuales reflejan los comentarios de Don Gerardo a las versiones de estos documentos del pasado 10 de noviembre. De estar conformes con estos documentos, se podría coordinar para la firma correspondiente el jueves o viernes de esta semana.

Me dejan saber cualquier duda o comentario.

Saludos,

### Pablo Rodríguez-Solá

### O'Neill & Borges

American International Plaza, Suite 800
250 Muñoz Rivera Avenue
San Juan, P.R. 00918-1813
787-764-8181 - Switchboard
787-753-8944 - Fax
787-282-5717 – Direct

------------

This email may contain material that is confidential, privileged and/or attorney work product for the sole use of the intended recipient. Any review, reliance or distribution by other or forwarding without express permission from the sender is strictly prohibited. If you are not the intended recipient, please contact the sender and delete all copies.

IRS Circular 230 Disclosures: To ensure compliance with requirements imposed by the IRS, we inform you that any United States federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promotions, marketing, or recommending to another party any transaction or matter addressed herein.

**4 attachments**

- **DVComparison_Class A Voting Common Stock Shareholders Agreement.02doc-Class A Voting Common Stock Shareholders Agreement.04doc.doc**
  98K

- **DVComparison_Class B Non-Voting Common Stock Shareholders Agreement.02doc-Class B Non-Voting Common Stock Shareholders Agreement.04.doc**
  86K

- **DVComparison_By-Laws of Caribbean Glaze Corporation.03-By-Laws of Caribbean Glaze Corporation.05.doc**
  95K

- **DVComparison_Side Letter.01-Side Letter.03.doc**
  50K

DRAFT ~~11~~12/~~10~~15/09

# CLASS B NON-VOTING COMMON STOCK
# SHAREHOLDERS AGREEMENT

This Class B Non-Voting Common Stock Shareholders Agreement (this "Agreement") dated as of ~~November~~December ___, 2009, by and among the individual signatories hereto (collectively hereinafter referred to as the "Shareholders"), as Shareholders of Caribbean Glaze Corporation, a corporation organized and existing under the laws of the Commonwealth of Puerto Rico (hereinafter referred to as the "Corporation").

WITNESSETH:

**WHEREAS**, the Corporation has an authorized capital consisting of One Million (1,000,000) shares of Common Stock having a par value of One Dollar ($1.00) each, divided as follows: (i) Five Hundred Thousand (500,000) shares designated as Class A Voting Common Stock, with full voting rights; and (ii) Five Hundred Thousand (500,000) shares designated as Class B Non-Voting Common Stock, with no voting rights.

**WHEREAS**, the shares of Class A Voting Common Stock and the shares of Class B Non-Voting Common Stock have identical rights in current and liquidating distributions.

**WHEREAS**, the Shareholders own in the aggregate ~~_____(_____~~Seventy Thousand Eight Hundred Thirty-Three (70,833) shares of Class B Non-Voting Common Stock of the Corporation (the "Shares"), comprising all of the issued and outstanding shares of Class B Non-Voting Common Stock of the Corporation, allocated among them as set forth in Exhibit A attached hereto;

**WHEREAS**, the holders of shares of Class A Voting Common Stock of the Corporation (the "Class A Shareholders") are signatories of a separate shareholders agreement with the Corporation.

**WHEREAS**, the Shareholders believe it to be in their best interests to enter into this Agreement to set forth their respective rights and obligations in connection with the Corporation;

**NOW, THEREFORE,** it is agreed by and among the parties as follows:

1. **Certificate of Incorporation; By-Laws.**

    (a) Each of the Shareholders acknowledges that the Corporation has previously furnished to it copies of the Certificate of Incorporation and By-Laws of the Corporation (respectively, the "Certificate of Incorporation" and the "By-Laws") as in effect on the date hereof. Each Shareholder covenants and agrees that it will at all times take such actions as shall be reasonably required, in each case to give effect to the provisions of this Agreement as well as the Certificate of Incorporation and By-Laws of the Corporation, and that it will at no time act, in a manner contrary to any of the provisions of this Agreement.

2. **Tax Matters.**

    Each of the Shareholders <u>residing in a particular taxing jurisdiction</u> covenants that it shall disclose to the other Shareholders <u>residing in the same taxing jurisdiction</u> the income tax treatment to be sought by it on any given fiscal year for distributions received by it from the Corporation. Each of the Shareholders further covenants and agrees that, in the event the other Shareholders believe in good faith that the tax treatment to be sought by said Shareholder in respect of any such distributions is manifestly and unjustifiably inconsistent with the income tax treatment to be sought by the other Shareholders with respect to such distributions, the Shareholders will seek a joint determination as to the proper tax treatment for those distributions from an independent accounting firm which determination shall be binding on the Shareholder. The costs associated with obtaining any such determination shall be borne by the Shareholder(s) whose tax position, in the opinion of the independent accounting firm should not prevail.

3. **Covenants.** (a) Each of the Shareholders covenants and agrees that it will not, without the prior written consent of the Corporation, admit additional shareholders, sell or issue shares of stock or otherwise grant an interest in the Shares owned by said Shareholder. Any attempt to transfer any Shares in violation of this Agreement shall be deemed ineffective and

the Corporation shall refuse to register the Shares in question in the name of the transferee.

(b) Each of the Shareholders covenants and agrees not to engage in any act or omission which would cause the Corporation to default under any agreement to which the Corporation is or may hereafter become a party.

(c) Except as provided in the preceding paragraphs of this Section and Section 5, no Shareholder may sell, transfer, pledge, assign, dispose of, mortgage, hypothecate or otherwise encumber or permit or suffer any encumbrance of all or any part of its Shares, except with the prior written consent of the Corporation, and any attempt to transfer or encumber any such Shares shall be void and given no effect by the Corporation.

(d) Each of the Shareholders covenants and agrees to execute and be bound by a Non-Compete and Confidentiality Agreement in the form of Exhibit B attached hereto.

4. **Ownership Interest**. (a) Each of the Shareholders covenants and agrees to contribute to the Corporation capital in exchange for shares of Class B Non-Voting Common Stock of the Corporation. The percentage ownership interest in the Corporation of each of the Shareholders shall be equal to the percentage obtained by dividing the sum of such Shareholder's capital contribution by the sum of the aggregate capital contributions of all the holders of capital stock of the Corporation.

(b) In the event that the Board of Directors determines that additional cash is needed for the operations of the Corporation, and efforts to borrow the needed funds from a third party have proven to be unsuccessful, the Shareholders shall contribute additional cash ~~and/or property~~ to the Corporation (the "Additional Contributions") in a pro-rata manner in accordance with their respective percentage of ownership interest in the Corporation. The Additional Contributions shall be made in such amounts and at such times as specified by the Board of Directors, but not less than thirty (30) days prior notice to the Shareholders.

(c) In the event that a Shareholder fails to contribute its full share of any Additional Contribution called for pursuant to Section 4(b) by the due date specified herein (such non-contributing Shareholder being herein called a "Non-Contributing

Shareholder" and the amount of cash and/or property which the Non-Contributing Shareholder failed timely to contribute being herein referred as its "Deficit Amount"), the Board of Directors shall give a notice of such failure to each of the other holders of shares of capital stock of the Corporation who has timely contributed its own full share of such cash ~~and/or property~~ (referred to as the "Contributing Shareholder"). Within fifteen (15) days of such notice, each Contributing Shareholder may contribute to the Corporation an amount up to the portion of the Deficit Amount corresponding to its percentage of ownership interest in the Corporation.

(d) After an Additional Contribution is made, the percentage ownership interest in the Corporation of each of the Shareholders shall be recalculated and shall be equal to the percentage obtained by dividing the sum of such Shareholder's capital contribution and Additional Contribution, if any, by the sum of the aggregate capital contributions and Additional Contribution of all the holders of capital stock of the Corporation. Shares of Class B Non-Voting Common Stock of the Corporation shall be issued and/or canceled in accordance to the recalculated percentage ownership interest of each Shareholder.

5. **Transfer of Shares**. (a) A Shareholder desiring to sell all or a portion of its Shares must first offer to sell said Shares to the Corporation, at the price it intends to offer such Shares for sale to third parties <u>or to the other Shareholders</u>, and the Corporation shall have the right to acquire such Shares for sale by written notice ("Acceptance Notice") to the selling Shareholder within thirty (30) days of its receipt from the selling Shareholder of the proposed terms of sale or transfer of the Shares. The closing of said purchase and sale shall take place on a date specified in the aforesaid notice not more than thirty (30) days after the date of the Acceptance Notice, or if such date is not a business date, then the first business date thereafter. The closing shall be held at the time and location in Puerto Rico designated by the Corporation, or at such other time and place as the Corporation and the selling Shareholder may agree. At the closing, the selling Shareholder shall (A) execute and deliver to the Corporation the Shares duly endorsed by it to the Corporation and any other instruments that the Corporation may reasonably require to give the Corporation good and clear title to all of the selling Shareholder's title and interest in said Shares, and (B) pay any transfer, capital gains or similar taxes arising out of or in connection with the sale and transfer of its Shares to the Corporation, and the Corporation shall deliver the purchase

price to the selling Shareholder by certified or manager's check to the order of the selling Shareholder.

(b)  In the event the Corporation fails to provide an Acceptance Notice to the selling Shareholder in the manner contemplated in the preceding paragraph, then the selling Shareholder must offer to similarly sell the pertinent Shares to the Class A Shareholders in accordance with the percentage ownership interest in the Class A Voting Common Stock of each Class A Shareholder, and said Class A Shareholders shall have the right to acquire their proportionate share of such Shares for sale by giving an Acceptance Notice to the selling Shareholder of the proposed terms of sale or transfer of the Shares (the "Accepting Shareholder").  The closing of said purchase and sale shall take place in the form and manner set forth in paragraph (a).

(c)  In the event a Class A Shareholder offered Shares pursuant to the provisions of the preceding paragraph fails to provide an Acceptance Notice to the selling Shareholder in the manner contemplated in the preceding paragraph (herein called the "Non-Accepting Shareholder"), the selling Shareholder shall first offer to sell the proportionate share of the Shares of the Non-Accepting Shareholder to the Accepting Shareholder(s) who has(ve) given an Acceptance Notice in accordance with paragraph (a).  The Accepting Shareholder(s) shall have the right to acquire such Shares for sale by giving an additional Acceptance Notice to the selling Shareholder within thirty (3) days of its receipt from the selling Shareholder of the proposed terms of the sale.  The closing of said purchase and sale shall take place in the form and manner set forth in paragraph (a).  If the Accepting Shareholder offered Shares fails to provide an additional Acceptance Notice, then the selling Shareholder may sell the offered Shares to any third party under terms and conditions equal to the terms and conditions under, and at a price equal to or higher than the price at which the Shares were offered by the selling Shareholders to the other Shareholders; provided, however, that any sale to a third party shall be previously approved by (i) the holders of at least seventy ~~five~~ percent (~~75~~70%) of all of the issued and outstanding shares of Class A Voting Common Stock, and (ii) Krispy Kreme Doughnut Corporation.

(d)  Except as provided in the preceding paragraphs of this Section and Section 3, no Shareholder may sell, transfer, pledge, assign, dispose of, mortgage, hypothecate or otherwise encumber or permit or suffer any encumbrance of all or any part

of its Shares, except with the prior written consent of the Corporation and any attempt to so transfer or encumber any such Shares shall be void and given no effect by the Corporation.

(e) Anything herein to the contrary notwithstanding, the Shareholders agree that in the event the holders of at least seventy ~~five~~ percent (~~75~~70%) of the issued and outstanding shares of Class A Voting Common Stock agree to sell their shares, the Corporation shall have the right to require that all of the Shareholders tender their Shares for their corresponding consideration of the sale.

6. **Insolvency of a Shareholder**. (a) If any Shareholder (herein called a "Failed Shareholder") shall at any time commit an Act of Insolvency (as hereinafter defined), it shall promptly notify the Corporation. The Corporation shall have the option, exercisable by notice to the Failed Shareholder, at any time after the commission by the Failed Shareholder of an Act of Insolvency, to acquire the Shares of the Failed Shareholder, at a price (the "Purchase Price") equal to the amount derived from the following formula: 5X LTM EBITDA (normalized, excluding one time items) less LT debt plus cash and cash equivalents.

(b) The closing of the purchase and sale of the Failed Shareholder's Shares (which Shares shall be transferred free and clear of all liens, encumbrances and adverse claims) shall take place on a date specified in the aforesaid notice not more than thirty (30) days after the date of said notice, or if such date is not a business date, then the first business date thereafter. The closing shall be held at the time and location in Puerto Rico designated by the Corporation, or at such other time and place as the Failed Shareholder and the Corporation may agree.

(c) At the closing, the Failed Shareholder shall (A) endorse and deliver the Shares to the Corporation and execute and deliver any other instruments that the Corporation may reasonably require to give the Corporation good and clear title to all of the Failed Shareholder's right, title and interest in and to the Shares, and (B) pay any transfer, capital gains or similar taxes arising out of or in connection with the sale and transfer of its Shares to the Corporation, and the Corporation shall deliver the Purchase Price to the Failed Shareholder by certified check to the order of the Failed Shareholder.

(d) As used in this Agreement, an "Act of Insolvency" by a Shareholder shall occur in the event such Shareholder, or

any partner or shareholder of said Shareholder whose ownership interest in the Shareholder exceeds twenty percent (20%):

    (i)   Shall be dissolved or liquidated except to effect a permitted transfer under this Agreement;

    (ii)  Admits in writing its inability to pay its debts generally as they become due;

    (iii) Makes an assignment for the benefit of its creditors, other than assignments as collateral security;

    (iv)  Commences a voluntary case or has entered against it an order for relief under any chapter of the Federal Bankruptcy Code (Title Eleven of the United States Code) or any similar order or decree under any federal, Commonwealth or state law, now in existence, or hereafter enacted having the same general purpose, and such order or decree is not vacated within sixty (60) days after entry;

    (v)   Causes, suffers, permits or consents to the appointment of a receiver, trustee, administrator, conservator, sequestrator, liquidator or similar official in any federal, state, Commonwealth or foreign judicial or nonjudicial proceeding, to hold, administer or liquidate all or substantially all of its assets and such appointment is not revoked or terminated and such official is not discharged of his duties within sixty (60) days of his appointment; or

    (vi)  Suffers or permits an attachment of its Shares which is not removed within sixty (60) days.

7.   **Endorsement of Stock Certificates**.  (a) A copy of this Agreement shall be filed with the Secretary of the Corporation and kept with the minutes of meetings of directors and Shareholders of the Corporation.

(b) Each certificate representing Shares subject to this Agreement shall bear a reference to this Agreement in substantially the following form:

    The sale, assignment, transfer, pledge or hypothecation of the securities represented by this certificate is restricted by and subject to the provisions of a Class B Non-Voting Common

Stock Shareholders Agreement dated as of ~~November~~<ins>December</ins> ___, 2009, as the same may be amended from time to time (the "Agreement"). A signed counterpart of which the Agreement is on file at the offices of the Corporation and a copy of the Agreement will be furnished to any shareholder upon request and without charge.

8. **Termination of Shareholders' Rights and Obligations**. Except as otherwise provided in Sections 3 and 10 and elsewhere in this Agreement, all rights and obligations of any Shareholder pursuant to this Agreement shall terminate when such Shareholder, for reasons not constituting a default under this Agreement, is no longer the beneficial owner of any Shares after compliance with the provisions hereof.

9. **No Inconsistent Agreements**. Neither the Shareholders nor the Corporation shall hereafter enter into any agreement with respect to the Shares which is inconsistent with the rights granted to the Shareholders in this Agreement.

10. **Indemnity**. (a) Each Shareholder (the "Indemnifying Party") hereby agrees to indemnify and hold the Corporation and its affiliates, shareholders, officers, directors, partners and employees from and against any and all claims, demands, actions and rights of action (including reasonable attorneys' fees and costs, whether suit is instituted or not, and if instituted, whether at any trial or appellate level) which shall or may arise by virtue of:  (i) anything done or omitted to be done by the Indemnifying Party (through or by its agents, employees or other representatives) outside the scope of, or in breach of the terms of, this Agreement, including, without limitation, its covenants herein; (ii) any breach of a warranty or representation of the Indemnifying Party contained herein, if any; and (iii) any material misrepresentation, omission or inaccuracy in any schedule, instrument or paper delivered or to be delivered hereunder, or in connection with the transactions herein contemplated, by such Indemnifying Party.

(b) The provisions of this section shall survive for six (6) years after the termination or lapse of this Agreement.

11. **Notices**. All notices, requests, consents and other communications required or permitted under this Agreement shall be in writing (including telefax communication) and shall be (as elected by the person giving them notice) hand delivered by

messenger or courier service, transmitted, or mailed by registered or certified mail (postage prepaid), return receipt requested, addressed to the address set forth for each Shareholder and the Corporation in the signature page hereof.

Each such notice shall be deemed delivered (A) on the date delivered if by personal delivery, (B) on the date of transmission with confirmed answer back if by telefax, or (C) on the date upon which the return receipt is signed or delivery is refused.

(b) By giving to the other Shareholders and the Corporation at least fifteen (15) days written notice thereof, a Shareholder and its successors and assigns shall have the right from time to time and at any time during the term of this Agreement to change its respective address.

12. **Applicable Law**.  The laws of the Commonwealth of Puerto Rico shall govern the interpretation, validity and performance of the terms of this Agreement, regardless of the law that might be applied under applicable principles of conflicts of laws.  Each of the Shareholders submit to the exclusive jurisdiction of the courts of the Commonwealth of Puerto Rico.

13. **Headings**.  The headings in this Agreement are for convenience of reference only and shall not control or affect the meaning or construction of any provision hereof.

14. **Entire Agreement**.  This Agreement constitutes the entire agreement and understanding of the parties hereto in respect of the subject matter contained herein and therein, and there are no restrictions, promises, representations, warranties, covenants or undertakings with respect to the subject matter hereof other than those expressly set forth or referred to herein or therein.  This Agreement supersedes all prior agreements and understandings between the parties hereto with respect to the subject matter hereof and thereof.

15. **Severability**. (a) The invalidity, illegality or unenforceability of any provision of this Agreement in any jurisdiction shall not affect the validity, legality or enforceability of the remainder of this Agreement in such jurisdiction or the validity, legality or enforceability of this Agreement or such provision in any other jurisdiction, it being

intended that all rights and obligations of the parties hereunder shall be enforceable to the fullest extent permitted by law.

    (b)  If any of the provisions in this Agreement should be invalid, unreasonable or unenforceable in any jurisdiction, such provisions will be deemed amended to the extent necessary for such provisions to be valid, reasonable and enforceable in such jurisdiction.  The foregoing provisions will not be deemed amended for purposes of their enforcement in any jurisdiction in which such provisions would be reasonable, valid, and enforceable without amendment.

    16.  **Other Agreements**.  Nothing contained in this Agreement shall be deemed to be a waiver of, or release from, any obligations any party hereto may have under any other agreement or deed.

    17.  **Assignment**. No right or obligation of a Shareholder under this Agreement shall be assignable without the prior written consent of the Corporation and any attempted assignment thereof in violation of this provision shall be void and unenforceable.

    18.  **Successors and Assigns**.  Except as herein otherwise specifically provided, this Agreement shall be binding upon and inure to the benefit of the Shareholders and their successors and permitted assigns, including, without limitation, transferees of Shares.

    19.  **Counterparts**.   This Agreement may be executed in counterparts, each of which shall be deemed an original but all of which shall constitute one and the same agreement.

    20.  **Covenant by the Corporation.**   The Corporation covenants and agrees not to effect any transfer of Shares by any Shareholder until it has received evidence reasonably satisfactory to it that the provisions of this Agreement, if applicable to such transfer, of whatever kind, have been complied with.

**IN WITNESS WHEREOF,** this Agreement has been signed by each of the parties as of the date first above written.

**HOLDERS OF SHARES OF**
**CLASS B NON-VOTING COMMMON STOCK**                    **SPOUSES**


_____                          _____

   Address:


_____                          _____

   Address:


_____                          _____

   Address:


_____                          _____

   Address:


**ACKNOWLEGED AND AGREED TO:**

**CARIBBEAN GLAZE CORPORATION**


By: _____
    Name:  John M. Cook
    Title: President

    Address:

**EXHIBIT A**

**Name of Shareholder**                    **Number of Shares**

[To Come]

**EXHIBIT B**

**Confidentially and Non-Competition Agreement**

[See Attached]

Document comparison done by DeltaView on Tuesday, December 15, 2009 11:23:59 AM

| Input: | |
|---|---|
| Document 1 | file://C:/WPDATA/138/South American Rest/Caribbean Glaze Corp/Shareholders Agreements/Class B Non-Voting Common Stock Shareholders Agreement.02doc.doc |
| Document 2 | file://C:/WPDATA/138/South American Rest/Caribbean Glaze Corp/Shareholders Agreements/Class B Non-Voting Common Stock Shareholders Agreement.04.doc |
| Rendering set | Standard |

| Legend: | |
|---|---|
| Insertion | |
| Deletion | |
| Moved from | |
| Moved to | |
| Style change | |
| Format change | |
| Moved deletion | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 10 |
| Deletions | 11 |
| Moved from | 0 |
| Moved to | 0 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 21 |